STATE of Wisconsin, Plaintiff-Respondent,

v.

Dennis E. BAILEY, Defendant-Appellant.

Court of Appeals

*No. 2008AP3153–CR. Submitted on briefs June 2, 2009.
—Decided August 11, 2009.*

2009 WI App 140

(Also reported in 773 N.W.2d 488.)

350

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Jeffrey W. Jensen* of *Law Offices of Jeffrey W. Jensen* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general, and *Michael J. Losse*, assistant attorney general.

Before Fine, Kessler and Brennan, JJ.

¶ 1. BRENNAN, J. Dennis E. Bailey appeals from a judgment entered after he pled guilty to one count of possession of a controlled substance, cocaine, with intent to deliver, as a second or subsequent offense and one count of felony bail jumping, contrary to WIS. STAT. §§ 961.41(1m)(cm)4., 961.48 and 946.49(1)(b) (2007–08).[1] Bailey challenges the trial court's order denying his motion seeking suppression. Bailey argues that the City of Milwaukee police officer had no authority to stop his vehicle for unlawfully tinted windows. He

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

argues that the subsequent search of his vehicle was not justified by reasonable suspicion. Because we conclude that City of Milwaukee police officers are authorized to enforce city ordinances promulgated under the traffic code and that the officer had reasonable suspicion to justify the search of Bailey's vehicle, we affirm.

## BACKGROUND

¶ 2. On April 15, 2007, Milwaukee Police Officer Joseph Honzelka, while on routine patrol, parked on his motorcycle at the intersection of North 45th Street and West North Avenue. At about 7:25 p.m., Honzelka observed a vehicle with the front passenger window having darkened tint greater than the limit set by ordinance. Honzelka pulled over the vehicle and told the sole occupant/driver, Bailey, that he was stopping him for a tint violation.

¶ 3. Meanwhile, Milwaukee Police Officer Jeffrey Novack had arrived on the scene, as Honzelka's backup. Novack stood behind Honzelka at Bailey's driver's window, while Honzelka explained the reason for the stop. Novack observed Bailey make three to five distinct and repeated kick motions with his right foot as if he was attempting to hide something under the driver's seat. Honzelka informed Bailey that he was going to test the windows with a tint meter and requested that Bailey exit the vehicle and step to the rear so he could conduct the tint test. Bailey did and consented to a pat down of his person for the officer's safety. Honzelka and Bailey then moved from the back of the vehicle to the sidewalk side of the car to get out of "harm's way, traffic-wise." Novack then walked to the front passenger side of the vehicle and saw a white plastic bag under the driver's seat, partially exposed. Novack indicated he thought

the bag may contain a weapon. When Novack asked Bailey what was in the bag, Bailey answered "candy."

¶ 4. Novack entered the vehicle, removed the bag from under the seat and felt a hard object inside. When Novack opened the bag, he found two clear bags containing a white, chunky substance believed to be cocaine and a small digital scale. Bailey was placed in custody. Honzelka performed the tint test on the windows and confirmed that both the front and rear windows of the vehicle were in violation of the tint ordinance, only allowing 11.8 percent of light through the driver's side front window.[2] Honzelka issued a citation for the tint violation.

¶ 5. Bailey was charged with possession with intent to deliver a controlled substance, cocaine (more than forty grams) as a second or subsequent offense. He was also charged with felony bail jumping relating to a 2007 child abuse charge. Bailey pled not guilty to both and filed a motion seeking to suppress the evidence obtained during the traffic stop, asserting that the warrantless stop was illegal.

¶ 6. The trial court held a hearing on the suppression motion on June 8, 2007. Honzelka and Novack testified. Honzelka testified that he had ten years of experience as a City of Milwaukee police officer and that last year he had written thirty to forty citations a month for illegal tint violations. He was working general traffic patrol when he observed Bailey's vehicle from a distance of about twenty to thirty feet. He first noticed the tint violation on the front passenger side window, then, as the vehicle passed by, he observed it on

---

[2] The ordinance requires the front windows to allow fifty percent of light in and the rear windows to allow thirty-five percent of light into the vehicle. *See* MILWAUKEE, WIS., ORDINANCE § 101–4.5; *see also* WIS ADMIN. CODE § TRAN. 305.32.

the rear passenger window and finally the rear windshield. Although it was 7:25 p.m., dusk, when he observed Bailey's vehicle, he testified that it is actually easier to spot the tint violations at that time of day. He stopped Bailey's vehicle because the tinting was darker than the legal tint.

¶ 7. Novack testified that he had eleven years of experience as a City of Milwaukee police officer and knew that the location of this stop was a high crime area. He saw Honzelka leave the parking lot to make the traffic stop and followed. They did not have a pre-arranged plan. He saw Bailey kick three to five times with his right foot under his seat while Bailey was talking to Honzelka. He knew that a lot of guns and drugs were often kept in cars. The movements that Bailey was making with his foot were consistent with what Novack had seen in the past. Novack assumed Bailey was trying to hide a gun based on his experience. He had made this same type of observation twenty to fifty times in the past and had recovered a gun in ten to fifteen of those times. He testified that he has recovered approximately fifty to seventy guns out of vehicles in his career and ten to fifteen guns out of vehicles from this particular area.

¶ 8. When Novack saw part of the bag in plain view under Bailey's seat in the same area that Bailey had kicked, he asked Bailey what was in it. Bailey answered, "candy." Novack did not believe Bailey would attempt to hide candy. When Novack slid the bag out and felt it, he testified it was bigger than he thought, was opaque and contained a hard object approximately three to five inches wide and three inches high, which he believed could be a gun. He felt several other smaller hard objects in the bag. When he opened the bag, the

357

larger hard object turned out to be a digital scale, which he seized along with the cocaine.

¶ 9. Bailey did not testify at the hearing. At the conclusion of the hearing, the trial court allowed the parties to file briefs. On June 29, 2007, the parties were brought back to the courtroom to receive the trial court's ruling on the suppression motion. The trial court found the officers' testimony credible and that Honzelka was "able to identify what tint is too dark and what tint is too light based upon his experience." The trial court found that Honzelka had authority "to pull over a vehicle for ordinance violations, including equipment violations." Finally, with regard to the traffic stop, the trial court found that Honzelka "did have a reasonable suspicion to find that the defendant did a [sic] violate City of Milwaukee ordinance regarding the tint based upon his experience in the field."

¶ 10. Regarding the search of the vehicle, the trial court then ruled:

> Based upon all of that then, the court will find that the stop itself was appropriate with regard to the search itself. That officer — the second officer did observe the bag being kicked under the seat, furtive-types of movements. He did testify that he has observed a number of guns in this — actually in this neighborhood with similar types of actions occurring.
>
> The court will find that he did have a reason to take the plastic bag out from underneath the seat. And upon doing that, he did appropriately feel the bag to see if it did contain a weapon and did subsequently find the materials within the bag.
>
> So the court will find that the search of the bag was appropriate also. And I will then deny the defense's motion to suppress the items found within that bag.

¶ 11. Subsequent to the ruling on the suppression motion, Bailey entered into a plea bargain with the State. He pled guilty to both counts and was sentenced to nine and a half years on the drug count consisting of three and a half years of initial confinement, followed by six years of extended supervision. On the bail jumping count, he was sentenced to a total of two years, with one year of initial confinement followed by one year of extended supervision to be served concurrently. Judgment was entered. Bailey now appeals.

## DISCUSSION

### I. TRAFFIC STOP

¶ 12. Bailey challenges the traffic stop of his vehicle on two grounds. He contends that: (1) a City of Milwaukee police officer lacks authority to stop a vehicle for an administrative code equipment violation; and (2) the trial court erroneously exercised its discretion in finding the police officer credible when he testified that he could determine excessive window tint with his naked eye. Bailey's lack of authority argument is based on two statutes, WIS. STAT. §§ 349.02(2) and 110.075.

¶ 13. Bailey argues that WIS. STAT. § 349.02(2) prohibits the traffic stop of his vehicle because it does not explicitly authorize a stop for an administrative code equipment violation. Excessive tinting of vehicle windows is prohibited by WIS. ADMIN. CODE § TRAN. 305.32 (May 2004), and not a statute, and therefore he argues that a police officer has no authority to enforce it. Next Bailey argues, based on WIS. STAT. § 110.075, that only a state patrol or Department of Transporta-

tion ("DOT") officer may enforce equipment violations. Finally, as to his attack on the trial court's exercise of discretion, he asserts, without argument, that it was unreasonable for the trial court to find that a police officer was able to discern excessive tinting with his naked eye. We reject Bailey's arguments and affirm.

¶ 14. "The interpretation of a statute is a question of law which we review *de novo.*" *Grosse v. Protective Life Ins. Co.*, 182 Wis. 2d 97, 105, 513 N.W.2d 592 (1994). "Whether a statute is ambiguous is [also] a question of law." *Petrowsky v. Krause*, 223 Wis. 2d 32, 35, 588 N.W.2d 318 (Ct. App. 1998). The framework for statutory analysis "'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.'" *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110 (citations omitted). When more than one relevant statute is involved, we analyze the statutes within the context of the whole statutory framework. "Therefore, statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*, ¶ 46.

¶ 15. We review factual findings and credibility determinations of the trial court under a "clearly erroneous" standard. *See* WIS. STAT. § 805.17(2). A trial court properly exercises its discretion when it examines the relevant facts, applies a proper standard of law, and, using a demonstrated rational process, reaches a conclusion that a reasonable court could reach. *Anderson v. Circuit Court for Milwaukee County*, 219 Wis. 2d 1, 9, 578 N.W.2d 633 (1998). "[W]hen the trial judge acts as

360

the finder of fact, . . . [it] is the ultimate arbiter of the credibility of the witnesses." *Gehr v. City of Sheboygan*, 81 Wis. 2d 117, 122, 260 N.W.2d 30 (1977).

¶ 16. Bailey's first argument is that a police officer lacks authority under WIS. STAT. § 349.02(2)(a) and (b) to stop a vehicle for an administrative code equipment violation. The main flaw in this argument is Bailey's disregard for the undisputed fact that Bailey was stopped for violating MILWAUKEE, WIS., ORDINANCE § 101–4.5, which *incorporated* WIS. ADMIN. CODE § TRAN. 305.32. Both Bailey and the State acknowledged this fact in their briefs before the trial court on the suppression motion. Additionally, the State's appellate brief asserted this fact and Bailey's appellate reply brief does not dispute it. Neither does Bailey dispute that the DOT had the authority to promulgate § TRAN. 305.32 or that Milwaukee properly enacted ORDINANCE § 101–4.5. Thus, Bailey was in fact stopped for violating a Milwaukee *ordinance* that *incorporated* a Wisconsin Administrative Code provision.

¶ 17. WISCONSIN STAT. § 349.02(2)(a) and (b) expressly allow a police officer to stop a vehicle for violation of a statute or *ordinance* enacted under this chapter. Section 349.02(2) provides:

> (2)(a) Notwithstanding sub. (1), a police officer, sheriff, deputy sheriff, traffic officer or motor vehicle inspector may not stop or inspect a vehicle solely to determine compliance with a statute or ordinance specified under par. (b) unless the police officer, sheriff, deputy sheriff, traffic officer or motor vehicle inspector has reasonable cause to believe that a violation of a statute or ordinance specified under par. (b) has been committed. *This paragraph does not limit the authority of a police officer, sheriff, deputy sheriff, traffic officer or motor vehicle inspector to make an arrest or issue a citation for a violation of any statute or ordinance specified under par. (b) observed in the course of a stop or*

361

*inspection made for a lawful purpose.* This paragraph does not apply to a traffic officer or motor vehicle inspector in the performance of duties under s. 110.075(2).

(b) The statutes and ordinances covered under par. (a) are all of the following:

1. This chapter and local ordinances enacted under this chapter.

2. Chapter 961 and local ordinances that strictly conform to s. 961.573(1) or (2), 961.574(1) or (2), or 961.575(1) or (2).

3. Chapters 341 to 346.

4. Local ordinances enacted under s. 59.54(25) or (25m) or 66.0107(1)(bm).

(Emphasis added.)

¶ 18. The plain language of subsections (a) and (b) above authorizes a police officer to stop a vehicle for an ordinance violation if there is reasonable cause to believe that a violation of an ordinance properly enacted under WIS. STAT. ch. 349 has been committed. There is no dispute that MILWAUKEE, WIS., ORDINANCE § 101–4.5 was lawfully enacted under ch. 349. Moreover, WIS. STAT. § 800.02(6) authorizes a municipal police officer to arrest a person without a warrant based on reasonable grounds to believe that the person is violating a municipal ordinance. Therefore, under WIS. STAT. § 349.02(2)(a) and (b)1., Honzelka had authority to stop Bailey for the window tint ordinance violation.

¶ 19. Bailey next argues that only state patrol and DOT officers have authority to stop vehicles for equipment violations under the administrative code, based on two sections of WIS. STAT. ch. 110. The first of those

362

sections, Wis. Stat. § 110.07, is entitled **"Traffic offic-ers; powers and duties"** and is the statute that authorizes the Secretary of the DOT to employ state "traffic officers" and describes their powers generally. It qualifies them as law enforcement officers under Wis. Stat. § 967.02(5). *See* Wis. Stat. § 110.001(1m). It gives these state "traffic officers" enforcement powers over the traffic code, including the power to stop and inspect vehicles. Section 110.07(1)(a)3. It conveys to them the powers of sheriff and law enforcement officers includ-ing arrest powers under Wis. Stat. § 968.07. *See* § 110.07(4).

¶ 20. The second statute, Wis. Stat. § 110.075, is entitled **"Motor vehicle inspection."** This statute prohibits operating any motor vehicle that is not in conformity with the DOT rules and authorizes *any* traffic officer to enforce those rules.

> When directed by any traffic officer or motor vehicle inspector, the operator of any motor vehicle shall stop and submit such motor vehicle to an inspection and such tests as are necessary to determine whether it meets the requirements of this section, or that its equipment is not in proper adjustment or repair, or in violation of the equipment provisions of ss. 110.05, 110.06, 110.063 and 110.064, ch. 347, or rules issued pursuant thereto.

Section 110.075(2). Thus, it specifically authorizes traf-fic officers to stop and inspect a vehicle for compliance with Wis. Stat. ch. 110 provisions "or rules issued pursuant thereto."

¶ 21. While it is clear that Wis. Stat. §§ 110.07 and 110.075 authorize the "traffic officers" of the state patrol and DOT to make stops and inspections and perhaps arrests for equipment violations, nothing in these statutes limits local law enforcements officers'

powers to do so. A City of Milwaukee police officer is a "traffic officer" under WIS. STAT. § 340.01(70),[3] and because § 110.075 provides that "any traffic officer" can stop and inspect vehicles for violations of WIS. STAT. ch. 110 or rules issued pursuant to ch. 110, and because WIS. STAT. § 349.02(2) permits a police officer to enforce a city ordinance violation upon reasonable basis to believe a violation has occurred, Honzelka had authority for the stop of Bailey for an ordinance violation.

¶ 22. It would be absurd to construe WIS. STAT. §§ 110.07 and 110.075 to give state patrol and DOT officers *more* authority to enforce traffic regulations than law enforcement officers. In contending that §§ 110.07 and 110.075 provide that police officers have *less* authority than state patrol and DOT officers, Bailey argues an absurdity. Under *Kalal*, we are to avoid absurd results. *Id.*, 271 Wis. 2d 633, ¶ 46.

¶ 23. Bailey's final challenge to the authority for the stop is that "no police officer could ever have a reasonable suspicion, based on observations with the naked eye, that tinted glass allows a prohibited percentage of light to pass through." He simply asserts that the officer's stop of Bailey was just to determine *whether* the windows were excessively tinted. His argument is conclusory and underdeveloped and merely a challenge to the trial court's findings to the contrary. We decline to review an issue that is not developed. *See League of Women Voters v. Madison Cmty. Found.*, 2005 WI App 239, ¶ 19, 288 Wis. 2d 128, 707 N.W.2d 285.

---

[3] " 'Traffic officer' means every officer authorized by law to direct or regulate traffic or to make arrests for violation of traffic regulations." WIS. STAT. § 340.01(70).

## II. REASONABLE BASIS FOR THE SEARCH

¶ 24. Bailey challenges the reasonable basis for the search of his vehicle, arguing that when the stop involves a minor equipment violation, even where, as was described here, there were "furtive movements," the officers were limited to a frisk of the person. Bailey cites *State v. Johnson*, 2007 WI 32, ¶ 43, 299 Wis. 2d 675, 729 N.W.2d 182, in support of this contention. He then attempts to distinguish *State v. Alexander*, 2008 WI App 9, 307 Wis. 2d 323, 744 N.W.2d 909, wherein we upheld a vehicle search. *See id.*, ¶¶ 13, 15. The State counters that the facts here support the vehicle search, that *Johnson*, which is distinguishable, does not apply and that *Alexander* cannot be distinguished. In his reply brief, Bailey argues that the vehicle search was prohibited under the recently decided *Arizona v. Gant*, 129 S. Ct. 1710 (2009). We conclude that the search of Bailey's vehicle was permissible under *Terry v. Ohio*, 392 U.S. 1 (1968), and *Michigan v. Long*, 463 U.S. 1032 (1983), and agree with the State that *Johnson* is distinguishable. We further conclude that *Alexander* supports our ruling, and that *Gant* does not apply as this is not a search incident to an arrest case.

¶ 25. In *Terry*, the United States Supreme Court recognized that there were some circumstances in which police officers may conduct a valid investigatory stop without a warrant and in the absence of probable cause to arrest. The stop is permissible if the officer, in light of his or her experience, had reasonable suspicion based on "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.*, 392 U.S. at 21

(footnote omitted). We review the facts under the totality of the circumstances. *Johnson*, 299 Wis. 2d 675, ¶¶ 35–36. Whether the intrusion is warranted is a common sense test. *See State v. Colstad*, 2003 WI App 25, ¶ 8, 260 Wis. 2d 406, 659 N.W.2d 394. "[I]n assessing the officer's actions, we should give weight to his or her training and experience, and the knowledge acquired on the job." *State v. Betow*, 226 Wis. 2d 90, 98, 593 N.W.2d 499 (Ct. App. 1999) (citation and footnote omitted). An investigatory stop is permissible for a violation of the non-criminal traffic laws as well as criminal. *See County of Jefferson v. Renz*, 231 Wis. 2d 293, 310, 603 N.W.2d 541 (1999).

¶ 26. The question of the validity of the search of Bailey's car presents issues of constitutional fact. "A finding of constitutional fact consists of the circuit court's findings of historical fact, and its application of these historical facts to constitutional principles." *Johnson*, 299 Wis. 2d 675, ¶ 13 (citing *State v. Turner*, 136 Wis. 2d 333, 343–44, 401 N.W.2d 827 (1987)). We review the former under the clearly erroneous standard, and the latter independently. *See Turner*, 136 Wis. 2d at 343–44.

¶ 27. We begin with the facts. Honzelka, a City of Milwaukee police officer with ten years of experience, testified that he observed Bailey operating his vehicle while on routine traffic patrol. Honzelka was a motorcycle officer working alone at a parking lot near North 45th Street and West North Avenue in Milwaukee. It was 7:25 p.m. and dusk.

¶ 28. Honzelka testified that he had written thirty to forty citations in the last month for illegal window tints and that based on his experience, it was easier to see the tint violations in the natural light of

dusk. Honzelka saw Bailey drive past, approximately twenty to thirty feet away from him. He could see that Bailey's front side passenger, rear passenger and rear windshield were darker than the city ordinance permitted. He pulled Bailey over, explained that he was being stopped for the window tint violation and asked Bailey to step out of the car so that he could test the windows with a tint meter to confirm his observations of a violation. Bailey stepped out and Honzelka patted him down for his safety.

¶ 29. The trial court found that the stop was lawful based on the officer's experience and his credible testimony as to his observations of the excessive tint to the windows. Bailey offered no witness or evidence to the contrary. The trial court's finding is supported by the record and therefore not clearly erroneous.

¶ 30. As to the search of the vehicle, Novack, a City of Milwaukee police officer with eleven years of experience, was also on patrol that night and in that area, which he described as a high crime area. He saw Honzelka exit the parking lot on his way to stop Bailey and he followed. Novack testified that he had recovered some fifty to seventy guns in his experience, ten to fifteen in this same area. He approached Honzelka as Honzelka was standing at Bailey's driver's side window. From where he was standing in back of Honzelka, Novack saw Bailey kick something under his driver's seat three to five times. While Honzelka was talking to Bailey and on the driver's side, Novack walked around to the front passenger side and saw that under Bailey's seat was a white plastic bag, the size of a baseball. Honzelka had just asked Bailey to get out of the vehicle so that he could perform the meter check on the window tint. Novack asked Bailey what was in the bag.

Bailey answered, "candy." Novack testified that he doubted it was candy under the seat. He testified that based on his experience, he thought it was a gun or something hiding a gun. Novack testified that he had seen this type of scenario twenty to fifty times before and had recovered weapons ten to twenty of those times.

¶ 31. Novack testified that he entered the driver's door and pulled out the bag. It was bigger than he thought and opaque. He felt a larger hard object, about three to five inches wide, three inches high and thought it was a gun. He reached in and found that it was a scale and some smaller rocks of cocaine.

¶ 32. The trial court found the officer's testimony was credible and that Novack had a reasonable basis for the search of the vehicle based on the actions of Bailey, the officer's experience and the stop location. The trial court made a number of factual findings. It found that Bailey made furtive-type movements, three to five kicks, which Novack believed were attempts to hide something. The trial court believed the officer when he said he thought it was a gun that the defendant was attempting to hide. It found that the officer had experienced this type of situation twenty to fifty times and in ten to fifteen of those times, Novack found guns in the vehicle where the driver was attempting to conceal them. It found that Novack had recovered seventy guns from vehicles. It found that the officer saw the white plastic bag under the driver's seat that he thought was a gun or was hiding a gun and when he pulled it out he could not see through the bag. He felt a hard object that he initially thought was a gun.

¶ 33. We must uphold the trial court's findings of fact unless they are "clearly erroneous." *See State v. Fonte*, 2005 WI 77, ¶ 11, 281 Wis. 2d 654, 698 N.W.2d

594. Bailey did not testify and the defense called no witnesses. There is, therefore, no contradictory evidence in the record. The trial court's findings are supported by the record. Accordingly, the trial court's findings of historical fact stand.

¶ 34. Bailey's constitutional argument challenging the basis for the search is on the premise that furtive-type movements are not enough to legitimize the search. He cites *Johnson* for this proposition and calls the facts in *Johnson* virtually indistinguishable from Bailey's situation. We are not convinced.

¶ 35. *Johnson* is distinguishable from Bailey on its facts. As Johnson was being stopped for an emissions violation, the police saw Johnson " 'lean forward, which appeared to be reaching underneath his front seat.' " *Johnson*, 299 Wis. 2d 675, ¶ 3. Officer Stillman saw a portion of Johnson's head and shoulders disappear from view. *Id.* Two officers testified later that they thought, based on their experience and training, that Johnson was attempting "to conceal contraband or weapons." *Id.* They ordered him out of the car and patted him down for their safety. *Id.*, ¶¶ 5–6.

¶ 36. The Wisconsin Supreme Court in *Johnson* held that: "Under the totality of the circumstances present in this case, we conclude that Johnson's 'head and shoulders' movement did not give [the officer] reasonable suspicion to conduct a search of Johnson's person and car." *Id.*, ¶ 36. The court concluded that his one furtive movement, despite the officer's concern that he was hiding weapons or contraband, was not enough to warrant the protective search. *Id.*, ¶¶ 36–44.

¶ 37. We conclude that there are four key distinctions between the search in *Johnson* and the search of Bailey's vehicle: (1) Bailey's furtive-type movements were repeated; (2) Bailey was given a chance to explain

369

and gave an apparently disingenuous response; (3) Bailey's stop was in a high crime area; and (4) Novack had experience recovering guns under similar circumstances and was genuinely concerned for his safety.

¶ 38. Bailey made not one, but three to five, furtive-type movements with his right foot which the trial court found were attempts to hide something. While the number of acts by itself may not be determinative of a reasonable basis, his persistence in the gesture is a specific, articulable measure of his strong intent to hide something from the view of the police officer who was stopping him. Novack gave Bailey an opportunity to explain what it was. Bailey's response was "candy." It was reasonable for Novack to doubt the truthfulness of that response and it created yet another articulable suspicion to support the inference that Bailey was trying to hide a gun.

¶ 39. Officer Novack's testimony about his experience with recovery of guns in similar situations and his description of the area as one of high crime were other distinctions from *Johnson*. Novack testified that he believed that a gun was present under Bailey's seat and that his and Honzelka's safety were at risk. The trial court found that testimony credible.

¶ 40. In *Johnson* the police offered no testimony as to experience with recovering guns in the same type of situation or describing the area as one of high crime. The police in *Johnson* testified they were looking for guns *or contraband*. Their uncertainty as to the focus of their search undercut their claim to a specific basis for believing a search was necessary for their protection. Novack's testimony was specific. The repeated kicks, unlikely "candy" explanation, the visible opaque plastic bag, and Novack's experience with guns in similar

370

situations all established a reasonable basis to believe a protective search was necessary for the officers' safety.

¶ 41. The potential presence of a gun under the seat was a significant safety concern because Bailey could have access to it. Bailey had not been arrested or handcuffed at the time of the search. Although he was out of the vehicle, he was free to move and, because he was stopped for an equipment violation only, was going to be returned to the vehicle while the police were on the scene. As noted by the United States Supreme Court in *Michigan v. Long*, "investigative detentions involving suspects in vehicles are especially fraught with danger to police officers." *Id.*, 463 U.S. at 1047. Novack's concern for the officers' safety was reasonable based on these specific and articuable facts and inferences.

¶ 42. We are not persuaded by Bailey's attempt to distinguish *Alexander*. The facts in Alexander are similar to the facts here. In *Alexander*, we upheld as lawful the search of a vehicle that was observed going through a red light (a traffic violation). *Id.*, 307 Wis. 2d 323, ¶¶ 1–2. While pursuing the vehicle, the officer observed the occupants making furtive movements involving the glove compartment. *Id.*, ¶ 3. When the officer conducted pat down searches on the occupants, no gun was found. *Id.* The officer then observed items usually found in the glove compartment on the driver's seat. *Id.* When the officer searched the glove compartment, a gun was discovered. *Id.* Our ruling was based on the particular circumstances, including: (1) the genuineness of the officer's concern for safety evidenced by that taking priority over the traffic violation; (2) the location being a high crime area, with recent reports of "shots-fired" complaints; (3) the furtive movements consistent with removing items from the glove com-

partment so that a weapon could be placed into the glove compartment; and (4) the failure of the vehicle to stop immediately. *Id.*, ¶¶ 13, 15. We held that based on all the factors involved, "the officers had reasonable suspicion to be concerned about their safety," the situation was dangerous and thus, the officers' actions were justified. *Id.*, ¶ 17.

¶ 43. Like *Alexander*, the officers involved in Bailey's case demonstrated a genuine concern for their safety. They were in a high crime area, Bailey was observed making repetitive furtive-type movements, and the officers were focused first on making sure no weapon was within Bailey's accessibility. The citation for the tinted window violation was not resolved until after safety concerns had been addressed. Further, Bailey failed to give a legitimate answer to the question posed about what was in the bag and the officer had substantial experience with respect to illegally tinted car windows driving in high crime areas where furtive-type movements in response to a traffic stop result in the discovery of weapons. Here, like in *Alexander*, the trial court found the officers to be credible. Accordingly, we see *Alexander* as support for the decision that the officer's search was lawful and reject Bailey's attempt to distinguish it.

¶ 44. Finally, we reject Bailey's assertion that based on *Arizona v. Gant* we are obligated to find the officer's protective search of the vehicle to be unreasonable. *Gant* is distinguishable from the instant case because it was a search incident to an arrest case. *See id.*, 129 S. Ct. at 1715. Gant arrived home, parked and exited his car and was about ten to twelve feet away from his car when he was immediately arrested and handcuffed for driving with a suspended license. *Id.* Gant was not going to be returning to his vehicle. The

police then searched his car, where they found a gun and a bag of cocaine in the pocket of a jacket in the back seat. *Id.* The Court held the search was unreasonable, declaring:

> [A]n officer [can] conduct a vehicle search when an arrestee is within reaching distance of the vehicle or it is reasonable to believe the vehicle contains evidence of the offense of arrest. Other established exceptions to the warrant requirement authorize a vehicle search under additional circumstances when safety or evidentiary concerns demand.

*Id.* at 1721. There is no dispute that Bailey's case is not a "search incident to arrest" case. The search in this case was done out of the officers' concern for their safety. No arrest had occurred before the search and as noted above, Bailey was very close to his car and would have been released after the tinting citation had been issued.

¶ 45. Thus, *Gant* does not govern Bailey's case. Rather, another United States Supreme Court case cited in *Gant*, *Long*, 463 U.S. 1032, is similar to the facts here. In *Long*, which is still good law after *Gant*, the Court held that a protective search conducted pursuant to an investigative stop, similar to the facts here, was lawful. *See id.* at 1034–35. In *Long*, officers observed a vehicle violating traffic laws. The vehicle ended up in a ditch. *Id.* at 1035. When asked questions by the officers, Long was not cooperating and then turned to walk toward his vehicle. *Id.* at 1036. When the officers followed, they saw a large hunting knife on the floor of the driver's side of the car. *Id.* They then stopped Long from returning to the vehicle and looked into the car to check for other weapons without entering. *Id.* An object protruding from the armrest was observed. *Id.* The search of the passenger compartment resulted in the

discovery of marijuana. *Id.* The Barry County Circuit Court denied Long's motion to suppress and the Michigan Court of Appeals affirmed, but the Michigan Supreme Court reversed. *Id.* at 1036–37. It held that " 'the sole justification of the *Terry* search, protection of the police officers and others nearby, cannot justify the search in this case.' " *Long*, 463 U.S. at 1037 (citation omitted). The United States Supreme Court took the case to address "the authority of a police officer to protect himself by conducting a *Terry*-type search of the passenger compartment of a motor vehicle during the lawful investigatory stop of the occupant of the vehicle." *Long*, 463 U.S. at 1037.

¶ 46. The Court held that protective searches pursuant to a *Terry* stop, as was done here, are "permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inference from those facts, reasonably warrant' the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." *Long*, 463 U.S. at 1049 (citation and footnote omitted). Simply said, protective searches are justified when under the particular facts and circumstances police have a reasonable belief that the suspect poses a danger. *Id.*

¶ 47. Bailey, like Long, was stopped for a traffic violation only. No arrest had occurred. He was not handcuffed. The police officer's belief that Bailey was hiding a gun under his seat was reasonable under the particular facts and circumstances. The officer's conclusion that Bailey may have immediate access to a weapon was justified. And the extent of his search was defined by his observations. Novack searched where he saw Bailey kick, under the driver's seat. "[I]t is clear

that the intrusion was 'strictly circumscribed by the exigencies which justified its initiation.' " *Id.* at 1051 (citing *Terry*, 392 U.S. at 26).

¶ 48. Here, Novack's belief that Bailey had attempted to hide a gun under the seat was reasonable. The extent of Novack's intrusion into Bailey's vehicle was "strictly circumscribed" in that it was limited to a search under the driver's seat. The Fourth Amendment does not require police to ignore their reasonable beliefs that an individual was concealing a weapon and it does not require police to ignore contraband discovered during a protective search. *Id.* at 1050. In the circumstances present here, Bailey would be returning to his vehicle. It was not unreasonable for the officer to make sure that he would not be returning to a vehicle that housed a gun that Bailey could then turn on the officers.

¶ 49. In sum, we conclude that the search of Bailey's vehicle was reasonable. The facts and circumstances presented here are consistent with what is permitted under *Terry*, *Long* and *Alexander*. We reject Bailey's attempts to analogize this case to fit under the holdings of *Johnson* and *Gant*.

¶ 50. Based on the foregoing, we conclude that the City of Milwaukee police officers were authorized to stop Bailey's vehicle to enforce the City's tinting ordinance promulgated under the traffic code and that the officers had reasonable suspicion to justify the protective search of Bailey's vehicle. Accordingly, we affirm the trial court's order denying the motion seeking suppression and, therefore, we affirm the judgment.

*By the Court.*—Judgment affirmed.