COURT OF APPEALS
DECISION
DATED AND FILED

May 7, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP503-CR**

Cir. Ct. No. **2024CM112**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

---

STATE OF WISCONSIN,

    PLAINTIFF-APPELLANT,

V.

RYAN ALAN STENNER,

    DEFENDANT-RESPONDENT.

---

APPEAL from an order of the circuit court for Sauk County: BLAKE J. DUREN, Judge. *Reversed and cause remanded for further proceedings.*

¶1 TAYLOR, J.[1] The State of Wisconsin appeals a circuit court order granting defendant Ryan Alan Stenner's motion to suppress evidence related to

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

charges for possession of cocaine in violation of WIS. STAT. § 961.41(3g)(c) and possession of drug paraphernalia in violation of WIS. STAT. § 961.573(1). For the reasons set forth below, I reverse and remand for further proceedings.

**BACKGROUND**

¶2 In February 2024, Baraboo Police Officer John Maginot conducted a traffic stop of the car Stenner was driving for a possible illegal tint of the rear window in violation of WIS. ADMIN. CODE § Trans 305.32(5)(b)(2), which I refer to as the "rear window tinting rule."[2] When Maginot asked Stenner to open his driver's side door so Maginot could check the window decal identifying the type of glass installed in the car, drug paraphernalia was observed in the driver's-side door handle. On further investigation, cocaine was also located in the car. Stenner was arrested and charged with the illegal possession of cocaine and drug paraphernalia.

¶3 Stenner moved to suppress all evidence obtained from the traffic stop, arguing that Maginot lacked reasonable suspicion to conduct the stop. At the evidentiary hearing on the motion, the State presented Maginot as their sole witness.

¶4 Maginot testified that at the time of the stop, he was a police officer with the Baraboo Police Department and had been in law enforcement since 2015.[3] As a police officer with the Baraboo Police Department, Maginot typically

---

[2] All references to WIS. ADMIN. CODE § Trans are to the March 2026 register, which contains the same pertinent code provisions in effect at the time of the stop here.

[3] At the time of his testimony at the suppression hearing, Maginot was no longer working for the Baraboo Police Department but as a police officer for the Village of Shorewood Hills Police Department.

worked the night shift, from 5:00 p.m. until 5:00 a.m., and he made the majority of his traffic stops during non-daylight hours. He estimated that he had been involved in "anywhere from a hundred to a couple hundred" traffic stops involving window tint issues.

¶5      Besides his police academy training at Blackhawk Technical College and field training in various law enforcement roles, Maginot participated in an eight-hour training in vehicle window tinting in December 2023 or January 2024. At this training, Maginot was instructed, in pertinent part, on relevant standards regarding the types of glass that are installed in different styles of vehicles and the corresponding tinting requirements; how to visually estimate the degree of window tint and identify an illegal tint; and how to use a tint meter, a device that measures the light transmission through glass and identifies the precise percentage of light traveling through the glass to the other side.

¶6      As to the window tint training, Maginot testified on the instruction he received as follows. Different types of glass are installed by the manufacturer on different styles of vehicles. The front windshields in all vehicles are typically installed with an "AS1" glass. On passenger vehicles, including the car that Stenner was driving on the morning at issue, the manufacturer typically installs an "AS2" type of glass, on which a tint is applied during the original manufacturing process that commonly allows for 70% of light transmission through the glass. This percentage of tint is not visible to the naked eye and allows an external observer to see through the windows into the vehicle. For multi-use vehicles, such as SUVs and pick-up trucks, the manufacturer typically installs an "AS3" type of glass that can be tinted with a lower light transparency on the back passenger and rear windows. Maginot had never encountered a passenger vehicle with AS3

glass. The specific glass type used in a vehicle is typically identified by a mylar decal on the window of the vehicle.

¶7      Tinting outside of the original vehicle manufacturing process may also occur, referred to as "aftermarket" tinting. Aftermarket tinting is typically applied through the application of a film on the inside of the window, over the manufacturer tint. If Maginot is following a passenger vehicle, and cannot see through the back windows into the vehicle and identify the interior headrests or occupants in the vehicle, he typically suspects that an illegal aftermarket tint may have been applied to the windows. Another clue Maginot uses to aid in visually identifying an illegal aftermarket tint on a passenger vehicle is to compare the window tint on the vehicle in question with a front windshield band. Front windshields may be equipped with a windshield band that appears near the top of the windshield and can be darkly tinted to "the teens to single digit [percentage] range" of light transmission to block sunlight from a driver's eyes. Maginot can visually identify when a passenger vehicle window is tinted as dark as a windshield band, which enables Maginot to infer that the tint is possibly an illegal aftermarket tint. Although Maginot can recognize by sight the difference between a window tint with a 70% light transmittal compared to a window tint with a 15% light transmittal, he cannot accurately determine the precise percentage of light that transmits through a car window. This determination can only be made with the use of a tint meter.

¶8      Concerning the stop of Stenner's car, Maginot testified as follows. In February 2024, at approximately 2:00 a.m., Baraboo Police Officer Nick Smith notified Maginot that Smith was following a car for suspected illegal window tinting and that the car had pulled into a gas station. Maginot located the car at the gas station and parked his marked patrol car down the street, observing that the

identified car which was parked at a gas pump was a passenger vehicle. When Stenner drove the car out of the gas station parking lot, Maginot followed and "observed that the rear back wind[ow] appeared to be entirely covered in aftermarket tint," and that the window appeared to him to be as dark as a front windshield band, or, in other words, in the teens to single digit percentage range of light transmission. Maginot suspected that the rear window had an illegal aftermarket tint and initiated a traffic stop based on this suspected violation.

¶9 As Maginot approached the car on foot, he noted that the driver's side windows also appeared to be covered in aftermarket tint, similar to the rear window. Maginot tested the driver's side windows with his tint meter, taking two test samples from the front driver's side window and two samples from the rear driver's side window. The tint meter reported 14.6% light transmission for the two samples taken from the driver's side window and 13.8% and 13.9% light transmission for the two samples taken from the rear driver's side window. Maginot did not test the rear window with his tint meter.

¶10 Maginot also attempted to check the mylar decal inside the car indicating the type of glass installed by the manufacturer to confirm that it was AS2 glass for passenger vehicles. It was at this point that drug paraphernalia was observed in the driver's-side door handle and cocaine was later discovered. Stenner was arrested and charged as indicated.

¶11 Stenner moved to suppress all evidence that resulted from the traffic stop, alleging that Maginot lacked reasonable suspicion to initiate the stop. The circuit court conducted a hearing on the motion. After taking evidence and hearing arguments, the court concluded that Maginot lacked reasonable suspicion to stop Stenner's car for an illegal rear window tint because: (1) Maginot was

unable to determine whether Stenner's rear window tint was applied by the manufacturer or added as aftermarket tint; (2) Maginot was unable to determine the precise percentage of light passing through the rear window; (3) the testimony of Maginot that he stopped Stenner's car because of the dark tinting in the rear window was "very similar" to the testimony of the law enforcement officer in *State v. Conaway*, 2010 WI App 7, 323 Wis. 2d 250, 779 N.W.2d 182, which this court determined was inadequate to constitute reasonable suspicion; and (4) "where there is at best a 50 percent chance that the law is in fact being violated, the officer does not have the reasonable suspicion to justify a traffic stop." The court granted Stenner's motion to suppress. The State appeals.

## DISCUSSION

¶12      The State argues that the circuit court erred when it determined that Maginot did not have reasonable suspicion to stop Stenner's car for a possible violation of the rear window tinting rule. Stenner argues that the court was correct in determining that Maginot lacked reasonable suspicion that a traffic violation was occurring or, in the alternative, that the rear window tinting rule is invalid and unenforceable.[4]

---

[4] Stenner's brief does not comply with Wis. Stat. Rule 809.19(8)(bm), which addresses the pagination of appellate briefs. *See* Rule 809.19(8)(bm) (providing that, when paginating briefs, parties should use "Arabic numerals with sequential numbering starting at '1' on the cover"). This rule was amended to its current form in 2021, *see* S. Ct. Order 20-07, 2021 WI 37, 397 Wis. 2d xiii (eff. July 1, 2021), and the reason for the amendment is that briefs are now electronically filed in PDF format, and are electronically stamped with page numbers when they are accepted for eFiling. The pagination requirements ensure that the numbers on each page of a brief "will match … the page header applied by the eFiling system, avoiding the confusion of having two different page numbers" on every page of a brief. Supreme Court Note, 2021, Rule 809.19.

¶13 I conclude that the circuit court applied an incorrect legal standard to its reasonable suspicion determination. Based on Maginot's uncontroverted testimony and the application of the correct legal standard, Maginot had reasonable suspicion to stop Stenner's car based on a possible violation of WIS. ADMIN. CODE § Trans 305.32(5)(b)2. I also reject Stenner's alternative argument that the rear window tinting rule is invalid and unenforceable. Therefore, I reverse.

## I. Reasonable Suspicion

### A. *Applicable Legal Principles and the Standard of Review*

¶14 The Fourth Amendment to the U.S. Constitution and Article I, Section 11 of the Wisconsin Constitution protect individuals against unreasonable government searches and seizures.[5] *State v. Tullberg*, 2014 WI 134, ¶29 & n.17, 359 Wis. 2d 421, 857 N.W.2d 120. Wisconsin courts have historically interpreted the search and seizure provision of our state's constitution consistent with the United States Supreme Court's interpretation of the Fourth Amendment. *Id.* To

---

[5] The Fourth Amendment to the U.S. Constitution provides in full:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Article I, Section 11 of the Wisconsin Constitution provides in full:

> The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

initiate a lawful traffic stop, a law enforcement officer must have reasonable suspicion that a traffic law has been, or is being, violated. *State v. Houghton*, 2015 WI 79, ¶¶29-30, 364 Wis. 2d 234, 868 N.W.2d 143.

¶15 The burden of proving that a traffic stop was reasonable is on the state. *State v. Post*, 2007 WI 60, ¶12, 301 Wis. 2d 1, 733 N.W.2d 634. "The question of what constitutes reasonableness is a common sense test" based on the totality of the circumstances and what a reasonable police officer would reasonably suspect in light of his or her training. *State v. Anderson*, 155 Wis. 2d 77, 83-84, 454 N.W.2d 763; *Post*, 301 Wis. 2d 1, ¶13. Reasonable suspicion does not require that an officer rule out possible innocent explanations for the observed activity prior to conducting a traffic stop "[i]f a reasonable inference of unlawful conduct can be objectively discerned[.]" *State v. Young*, 212 Wis. 2d 417, 430, 569 N.W.2d 84 (Ct. App. 1997). However, a mere hunch that a crime is afoot is not enough, and "'a particularized and objective basis'" must support the determination. *State v. Nimmer*, 2022 WI 47, ¶¶25-26, 402 Wis. 2d 416, 975 N.W.2d 598 (citation omitted). But reasonable suspicion is a low bar, and "'considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause.'" *Id.* (citation omitted).

### B. Window Tinting

¶16 A violation of a window tinting administrative code may give rise to a traffic violation. *State v. Bailey*, 2009 WI App 140, ¶¶16-18, 321 Wis. 2d 350, 773 N.W.2d 488 (recognizing police officers are authorized to stop vehicles for administrative code equipment violations). Suspected traffic violations may form the basis for reasonable suspicion and allow a police officer to conduct a traffic stop. *Houghton*, 364 Wis. 2d 234, ¶30; *Bailey*, 321 Wis. 2d 350, ¶24. Window

tinting requirements for vehicles are set forth in WIS. ADMIN. CODE § Trans 305.32(4)-(6). As noted, the rear window tinting rule, set forth in § Trans 305.32(5)(b), permits: (1) manufacturer-applied tinting during the original manufacturing process with no specified percentage of visible light penetration; and (2) aftermarket tinting that requires at least 35% of visible light to pass through the window.[6] § Trans 305.32(5)(b); *see Conaway*, 323 Wis. 2d 250, ¶3 ("Rear window tinting is permitted only if the window allows at least 35% of light to pass through, except that the limitation does not apply to tinting done during the original manufacture of a vehicle.").

¶17 Reasonable suspicion of an aftermarket illegal window tint does not require a precise determination of the exact percentage of light being transmitted through a vehicle window. *Conaway*, 323 Wis. 2d 250, ¶7. "Rather, the officer need only reasonably suspect that the window violates the [rule]." *Id.* Indeed, if a vehicle window appears "at about" the 35% transmission standard set forth in WIS. ADMIN. CODE § Trans 305.32(5)(b), there is reasonable suspicion that the tint falls below the acceptable standard. *Id.*

---

[6] Section 305.32(5)(b) of the Transportation section of the Wisconsin Administrative Code states, in pertinent part:

> **(b)** Tinting of the rear window is permitted as follows:
>
> **1.** The window is tinted by the manufacturer of the glazing and is installed as part of the original manufacturing process.
>
> **2.** The window is tinted by the application of tinting film to the inside of the glazing provided that *the combination of the glazing and tinting film permits passage through the window of at least 35% of the visible light striking the window*. The tinting films permitted under this subdivision may not be reflective.

(Emphasis added.)

¶18    Whether a law enforcement officer had reasonable suspicion to initiate a traffic stop is a two-step question of constitutional fact. *Houghton*, 364 Wis. 2d 234, ¶18; *see also Tullberg*, 359 Wis. 2d 421, ¶27 (whether evidence should have been suppressed involves a question of constitutional fact). A circuit court's findings of historical fact are reviewed for clear error. *Tullberg*, 359 Wis. 2d 421, ¶27. "A circuit court's finding of fact is not clearly erroneous unless it is against the great weight and clear preponderance of the evidence." *State v. Wiskerchen*, 2019 WI 1, ¶17, 385 Wis. 2d 120, 921 N.W.2d 730. Whether a set of facts, under the totality of the circumstances, constitutes reasonable suspicion is a legal question I review independently. *Tullberg*, 359 Wis. 2d 421, ¶27.

### C. Stenner's Car

¶19    The first issue I address is whether Maginot had reasonable suspicion that the rear window of Stenner's car violated the rear window tinting rule. For the reasons set forth, I conclude that Maginot did have reasonable suspicion that the rear window tint of Stenner's car violated the rule, justifying the stop.

¶20    At the time Maginot stopped Stenner's car, Maginot's window tint training was recent, having occurred only weeks prior to the stop. Maginot's window tint training taught him that, with the exception of front windshields, windows on passenger vehicles, such as the car Stenner drove when he was stopped, are originally manufactured with AS2 glass that allows at least 70% of light to transmit through the windows. Maginot testified that a window tint with this percentage of light transmission is not visible to the naked eye. In stopping Stenner's car, however, Maginot testified that he could visibly see the tint covering Stenner's rear window.

10

¶21 Maginot also testified that he is able to identify by sight glass that is tinted as dark as a windshield band, and that front windshield bands only allow a percentage of light transmission in the teens or single digit range. Maginot recognized that Stenner's rear window tint appeared equivalent to the tint on a front windshield band, which an officer could reasonably infer therefore violated the 35% light transmission rule for aftermarket tints. This satisfies the standard set forth in *Conaway*, that, when considering the 35% light transmission requirement, "it would be enough … if an officer testifies that he … is familiar with how dark a minimally complying window appears and that the suspect window appeared similarly dark or darker, taking into account the circumstances of the viewing." *Conaway*, 323 Wis. 2d 250, ¶7. Therefore, it was reasonable for Maginot to infer from these objective facts that the tint on Stenner's rear window was not applied by the original manufacturer of the car, but that it was applied as an aftermarket tint, and that the tint had a lower light transmission percentage than the required 35%.

¶22 To the extent that the circuit court concluded that Maginot lacked reasonable suspicion for the stop based on his testimony that Stenner's rear window was dark, this finding is incomplete. Maginot's uncontroverted testimony was that he stopped Stenner's car because the rear window tint was as dark as a front windshield band.

¶23 On this point, Stenner argues that Maginot lacked reasonable suspicion to conduct the traffic stop because Maginot had no way of knowing whether the rear window tint on Stenner's car was installed by the manufacturer or was an aftermarket tint, which was also a finding made by the circuit court in support of its legal determination that Maginot lacked reasonable suspicion. However, as stated above, it is reasonable to conclude that Maginot made an

inference that Stenner's rear window tint was not installed by the original manufacturer because the tint was visible and as dark as a front windshield band. The reasonable suspicion standard does not require that Maginot identify with absolute certainty that the rear window tint was not applied in the original manufacturing process, only that Maginot rely on objective facts when reasonably inferring that it was an aftermarket tint, which Maginot's testimony supports.

¶24 Moreover, Maginot was not required to determine the precise percentage of light transparency of Stenner's rear window tint before developing reasonable suspicion and initiating the stop. Rather, Maginot need only have reasonably suspected that Stenner's rear window tint did not comply with the rear window tinting rule. *Conaway*, 323 Wis. 2d 250, ¶7. Indeed, reasonable suspicion requires only that, under the totality of the circumstances and based on objective, articulable facts, Maginot reasonably suspected that the rear window violated the rear window tinting rule. Maginot's testimony established that this standard had been met. *See id.* To the extent that the circuit court based its determination that Maginot lacked reasonable suspicion on the fact that Maginot could not precisely determine the percentage of light passing through Stenner's rear window in the dark of the early morning, such a determination was not required to develop reasonable suspicion that Stenner's car violated the rear window tinting rule and is an erroneous application of law.

¶25 Although I independently review whether the totality of the facts support the legal determination of reasonable suspicion, I note that the circuit court applied the wrong legal standard when it determined that "where there is at best a 50 percent chance that the law is in fact being violated, the officer does not have the reasonable suspicion to justify a traffic stop." This standard was alleged by Stenner in the circuit court proceedings and in his response brief on appeal, but

it is not the standard set forth in Stenner's cited authority nor in the relevant case law cited in this discussion. *See State v. Newer*, 2007 WI App 236, ¶8, 306 Wis. 2d 193, 742 N.W.2d 923 ("[T]he reasonable suspicion inquiry considers the totality of the circumstances."). Accordingly, the court erred as a matter of law in applying a "50 percent chance" standard in concluding that Maginot lacked reasonable suspicion that the rear window tinting rule was violated and did not have sufficient grounds to initiate the stop.

¶26 Stenner also argues that Maginot's supposition—that all passenger vehicles have AS2 glass tinted by the manufacturer to allow 70% of light to transmit through it—is unreasonable. To underscore this point, Stenner presents the hypothetical that the rear window of a passenger vehicle with AS2 glass could be replaced with AS3 glass, which can be tinted during the original manufacturing process with as dark a tint as desired. I reject this argument because whether AS3 tinted glass "could" be installed in a passenger vehicle is irrelevant to the reasonable suspicion analysis and overlooks the facts in this case. "Reasonable suspicion does not require ruling out innocent explanations." *Conaway*, 323 Wis. 2d 250, ¶5. Maginot was also not required to affirmatively determine whether Stenner's rear window was composed of AS2 or AS3 glass before conducting the stop. It appears from Maginot's testimony that the only affirmative way to determine the type of window glass installed in Stenner's rear window was by locating the mylar decal affixed to the window which, based on Maginot's testimony, seems to have required stopping Stenner's car.

¶27 Stenner further argues that *Conaway* supports the circuit court's determination that Maginot lacked reasonable suspicion. Stenner is mistaken.

13

¶28    In *Conaway*, this court affirmed the circuit court's determination that the officer did not have reasonable suspicion to make the traffic stop based on illegal window tinting because the officer failed to connect his training and experience with the facts of the stop to establish reasonable suspicion. *Id.*, ¶¶8-13 ("[T]he problem is that the officer did not provide any specific, articulable facts supporting reasonable suspicion of a violation."). But here, Maginot's testimony established the connections between his training about vehicle glass, window tint and windshield bands, his experience in observing non-tinted windows and the darkness of windshield bands, and how he applied his training and experience to his observations of Stenner's car to develop reasonable suspicion that Stenner's rear window violated the rear window tinting rule.

¶29    Stenner also argues that Maginot had only his subjective opinion in forming reasonable suspicion rather than specific, objective facts, but this argument fares no better. For the reasons already discussed, I reject it.

¶30    In sum on the issue of reasonable suspicion, I conclude that the circuit court committed clear error in its pertinent factual findings and applied an incorrect legal standard in its determination that reasonable suspicion did not exist to justify the traffic stop. Accordingly, I reverse the circuit court's decision and order and remand for further proceedings consistent with this opinion.

## II. WISCONSIN ADMIN. CODE § Trans 305.32

¶31    In the alternative, Stenner argues that I should affirm the circuit court's decision because the rear window tinting rule, WIS. ADMIN. CODE

14

§ Trans 305.32(5)(b)2., is invalid and unenforceable.[7] Specifically, Stenner argues that because the Department of Transportation ("the department") set a standard in the rule which is more restrictive than the one contained in the enabling statute for the rule, which Stenner alleges is WIS. STAT. § 346.88(3), the rear window tinting rule is invalid. I reject this argument because the department has the authority to promulgate rules regarding vehicle equipment, which includes window tinting, and law enforcement may enforce administrative rules on window tinting. *See Bailey*, 321 Wis. 2d 350, ¶¶16-18.

¶32 The issue Stenner raises requires me to interpret statutes and administrative rules. *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶46, 271 Wis. 2d 633, 681 N.W.2d 110. The interpretation of statutes and administrative rules presents a question of law that is reviewed independently. *Wisconsin Ass'n of State Prosecutors (WASP) v. WERC*, 2018 WI 17, ¶31, 380 Wis. 2d 1, 907 N.W.2d 425.

¶33 Administrative agencies, including the department, may not implement or enforce "any standard, requirement, or threshold … unless that standard, requirement, or threshold is explicitly required or explicitly permitted by statute or by a rule that has been promulgated in accordance with this subchapter[.]" WIS. STAT. § 227.10(2m). WISCONSIN STAT. § 227.11(2)(a) further clarifies that agencies may promulgate rules interpreting the provisions of any statute enforced or administered by the agency, but "a rule is not valid if the

---

[7] In Stenner's appellate response brief, he alleges that WIS. ADMIN. CODE § Trans 305.32(5)(b)1., which "require[s] minimum levels of light transfer through aftermarket tinted windows," is invalid and unenforceable. Because this section pertains to window tint applied by the original manufacturer of the vehicle, I interpret his argument to be that § Trans 305.32(5)(b)2. is invalid and unenforceable, which is the section that applies to aftermarket tint.

rule exceeds the bounds of correct interpretation." § 227.11(2)(a); *see also* § 227.11(2)(a)3. ("A statutory provision containing a specific standard, requirement, or threshold does not confer on the agency the authority to promulgate, enforce, or administer a rule that contains a standard, requirement, or threshold that is more restrictive than the standard, requirement, or threshold contained in the statutory provision.").

¶34    To determine whether a statute authorizes an agency to create a rule, I first conduct a plain language interpretation of the enabling statute to give effect to the language used therein. *Mallo v. DOR*, 2002 WI 70, ¶18, 253 Wis. 2d 391, 645 N.W.2d 853. Second, I compare the language in the enabling statute to the language of the rule. *Id.*, ¶19; *WASP*, 380 Wis. 2d 1, ¶¶37-39. If the substance of the rule matches the substance of the language included in the enabling statute, referred to in case law as "the elements," the statute authorized the rule. *Grafft v. DNR*, 2000 WI App 187, ¶7, 238 Wis. 2d 750, 618 N.W.2d 897. Conversely, if the rule conflicts with the statute, the rule is invalid. *Seider v. O'Connell*, 2000 WI 76, ¶¶72-73, 236 Wis. 2d 211, 612 N.W.2d 659. I must strictly construe the enabling statute because agencies, including the department, may only exercise those powers which the legislature expressly conferred to it through the statutes under which the department operates. *WASP*, 380 Wis. 2d 1, ¶¶37-38; *see Wisconsin Legislature v. Palm*, 2020 WI 42, ¶¶51-52, 391 Wis. 2d 497, 942 N.W.2d 900 (explicit authority for rulemaking from the legislature is required following the codification of WIS. STAT. § 227.10(2m) under 2011 Wis. Act 21).

¶35    On the first point, I conclude that the rear window tinting rule is explicitly authorized by WIS. STAT. § 110.075. Section 110.075(2) requires motor vehicles to be subject to inspection "with respect to … glass… and other items of equipment designated by the secretary" and requires that vehicles meet the

requirements of WIS. STAT. "ch. 347, or rules issued pursuant thereto" by the department.[8] *See also* WIS. STAT. § 347.43(1s) (requiring vehicles operated on the highway to be equipped "with safety glass wherever glass is used on the motor vehicle in partitions, doors, windows or windshields"). Pursuant to § 110.075(6), the legislature authorized the department to promulgate rules regarding "the inspection program," which includes vehicle glass and windows. *See* § 110.075(6); *see also* WIS. STAT. § 85.16 (authorizing the department to make reasonable rules to execute its duties and functions as a department). Moreover, in WIS. STAT. § 347.02(8), the legislature explicitly anticipated that the department would establish rules related to window tinting on vehicles and created an exception to such a rule: "*If the department establishes by rule limitations on the tinting of motor vehicle windows*, the limitations do not apply to police vehicles[.]" (Emphasis added.) Thus, not only did the legislature authorize the department to promulgate rules about vehicle glass, but the legislature expressly expected that the department would establish rules on vehicle window tinting and created a statutory exception.

¶36 As noted, in the second part of the analysis, I compare the language in the enabling statute to the language in the rule to ensure that the language in the

---

[8] WISCONSIN STAT. § 110.075(2) states in full:

> When directed by any traffic officer or motor vehicle inspector, the operator of any motor vehicle shall stop and submit such motor vehicle to an inspection and such tests as are necessary to determine whether it meets the requirements of this section, or that its equipment is not in proper adjustment or repair, or in violation of the equipment provisions of [WIS. STAT. §§] 110.05, 110.06, 110.063 and 110.064, [WIS. STAT.] ch. 347, or rules issued pursuant thereto. Such inspection shall be made with respect to the brakes, lights, turn signals, steering, horns and warning devices, glass, mirrors, exhaust system, windshield wipers, tires, and other items of equipment designated by the secretary.

rule does not exceed the language in the enabling statute. On this second inquiry, I conclude that the rear window tinting rule, WIS. ADMIN. CODE § Trans 305.32(5)(b), does not exceed the language in the enabling statute, WIS. STAT. § 110.075. The purpose of § Trans 305 "is to prescribe minimum equipment requirements for vehicles and standards for the equipment used on vehicles" as authorized by the legislature in § 110.075. § Trans 305.01(1). As stated, vehicle glass is subject to regulation under § 110.075. The plain language of § Trans 305.32(5)(b)2. sets a minimum aftermarket tint requirement for a vehicle's rear window of permitting "passage through the window of at least 35% of the visible light striking the window." Thus, the rule matches the substance of the language included in the statute. In other words, as authorized by § 110.075, the rule establishes an aftermarket tinting requirement to allow at least 35% of light to pass through the vehicle window. "Because the administrative rule neither contradicts the legislative intent nor exceeds the bounds of correct interpretation," I conclude the rule is not invalid or unenforceable. *Grafft*, 238 Wis. 2d 750, ¶14 (citing *Seider*, 236 Wis. 2d 211, ¶¶71-72).

¶37    Stenner argues that, in deciding whether the rear window tinting rule exceeds statutory authority, I should apply the theory of analysis that appears in an opinion published by then-Attorney General Brad Schimel. Wis. Op. Att'y. Gen. OAG-04-17 (2017). Attorney general opinions are persuasive, non-binding authority. *State v. Beaver Dam Area Dev. Corp.*, 2008 WI 90, ¶37, 312 Wis. 2d 84, 752 N.W.2d 295 ("Opinions of the attorney general are not binding as precedent, but they may be persuasive as to the meaning of statutes."). I reject Stenner's argument because the analytical method set forth in the Attorney General opinion was withdrawn in an opinion published by current-Attorney General Josh Kaul. Wis. Op. Att'y. Gen. OAG-04-20, ¶¶5, 27 (2020). Stenner

identifies no supporting legal authority for the proposition that a withdrawn Attorney General opinion has persuasive value, and I reject his argument on this point. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (a court need not consider arguments that are unsupported by legal citations or are otherwise undeveloped).

¶38    Stenner also argues that the only possible enabling statute for the rear window tinting rule is WIS. STAT. § 346.88(3), which he states does not support the rule. Section 346.88(3) prohibits the obstruction of the driver's view of a vehicle's front and rear windshields with stickers or other objects.[9] Stenner's argument fails because, as discussed, § 346.88 is not the only enabling statute for the rear window tinting rule. I additionally reject this argument because § 346.88(3)(a) prohibits "nontransparent material" on rear windows. The purpose

---

[9] WISCONSIN STAT. § 346.88(3) states, in pertinent part:

> **(a)** No person shall drive any motor vehicle with any sign, poster or other nontransparent material upon the front windshield, front side wings, side windows in the driver's compartment or rear window of such vehicle other than a certificate or other sticker issued by order of a governmental agency. Such permitted sticker shall not cover more than 15 square inches of glass surface and shall be placed in the lower left-hand corner of the windshield; the left corner being on the driver's left when seated behind the wheel.
>
> **(b)** No person shall drive any motor vehicle upon a highway with any object so placed or suspended in or upon the vehicle so as to obstruct the driver's clear view through the front windshield.
>
> **(c)** No person shall drive any motor vehicle upon a highway so loaded or with any object so placed or suspended in or upon the vehicle so as to obstruct the driver's clear vision through the rear window unless such vehicle is equipped with an outside rear view mirror meeting the requirements of [WIS. STAT. §] 347.40.

of window tinting is to make the window less or nontransparent. As such, this statute also provides a basis, when combined with the other statutes, for the department to promulgate the rear window tinting rule.

¶39    In sum on this issue, I reject Stenner's argument that the rear window tinting rule is invalid and unenforceable.

## CONCLUSION

¶40    For the reasons set forth above, I reverse the circuit court's order granting Stenner's motion to suppress and remand for further proceedings consistent with this opinion.

*By the Court.*—Order reversed and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.