James GRAFFT, Petitioner-Respondent,†

v.

WISCONSIN DEPARTMENT OF NATURAL RESOURCES,
Respondent-Appellant.

Court of Appeals

*No. 00–0020. Oral argument August 10, 2000.—Decided
August 29, 2000.*

## 2000 WI App 187

(Also reported in 618 N.W.2d 897.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *Lorraine C. Stoltzfus*, assistant attorney general.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Neal A. Nielsen, III,* of Eagle River.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J. The Wisconsin Department of Natural Resources (DNR) appeals from an order reversing the DNR's denial of James Grafft's application for a permit to construct a permanent boat shelter. The DNR argues that it did not exceed its rule-making authority under WIS. STAT. § 30.12(3)(c)[1] when it promulgated WIS. ADMIN. CODE § NR 326.055(4)(f),

---

[1] All statutory references are to the 1997–98 version unless otherwise noted.

which provides that a permanent boat shelter permit may only be granted for locations adjacent to developed shorelines. Because the administrative rule neither contradicts the legislative intent nor exceeds the bounds of correct interpretation, we conclude the DNR did not exceed its authority in promulgating WIS. ADMIN. CODE § NR 326.055(4)(f). Accordingly, we reverse the order.

## BACKGROUND

¶ 2. In June of 1998, Grafft applied to the DNR for a permit to construct a permanent boat shelter on the bed of Stone Lake in Vilas County. In July, the DNR denied the permit, finding that the proposed project would be detrimental to the public interest, contrary to WIS. STAT. § 30.12(3)(b).[2] Specifically, the DNR concluded that the proposed boat shelter did not conform with the standards set forth in WIS. ADMIN. CODE § NR 326.055(4)(f), which provides:

> Permits for permanent boat shelters may only be granted for locations adjacent to developed shorelines. Developed shorelines are those where there are at least 5 principal structures including at least one on the applicant's property which are located within 500 feet of the proposed shelter site and which are visually intrusive as viewed from a location on the water.

---

[2] WISCONSIN STAT. § 30.12(3)(b) provides:

A person who seeks to place structures or deposits under par. (a) shall apply to the department for a permit. The department may disapprove the application if it finds that the proposed structure or deposit will materially impair navigation or be detrimental to the public interest.

753

Because the DNR found only four visually intrusive structures, it concluded the proposed project was located adjacent to undeveloped shoreline, thus precluding it from granting Grafft's permit application.[3] The Division of Hearings and Appeals affirmed the permit denial, and Grafft petitioned the circuit court for review of that denial.

¶ 3. The circuit court, relevant to this appeal, concluded that WIS. ADMIN. CODE § NR 326.055(4)(f) was invalid for exceeding the rule-making authority granted the DNR under WIS. STAT. § 30.12(3)(c), and remanded the matter to the DNR for further proceedings. This appeal followed.

### ANALYSIS

¶ 4. Generally we review the DNR's decision, and not that of the circuit court. *See Knight v. LIRC*, 220 Wis. 2d 137, 147, 582 N.W.2d 448 (Ct. App. 1998). Although we do not defer to the circuit court's opinion, its reasoning may assist us. *See Sterlingworth Condo. Ass'n v. DNR*, 205 Wis. 2d 710, 720, 556 N.W.2d 791 (Ct. App. 1996). "Our standard of review for agency decisions depends upon whether the issues presented are questions of law or questions of fact." *Knight*, 220 Wis. 2d at 147. Where, as here, we are construing a statute involving the scope of an agency's power, we give no deference to the agency's opinion, but rather, interpret the statute de novo. *See Capoun Revocable Trust v. Ansari*, 2000 WI App 83, ¶ 6, 234 Wis. 2d 335, 610 N.W.2d 129.

---

[3] "Visually intrusive" is defined as: "clearly standing out from the shoreline background because of color or reflectivity when viewed from out on the water during the time when leaves are on deciduous trees." WIS. ADMIN. CODE § NR 326.03(11).

¶ 5. The goal of statutory interpretation is to determine and give effect to the legislature's intent. *See Doe v. American Nat'l Red Cross*, 176 Wis. 2d 610, 616, 500 N.W.2d 264 (1993). We must first look to the statute's plain language. If the language is clear and unambiguous on its face, we merely apply that language to the facts at hand. *See In re Peter B.*, 184 Wis. 2d 57, 71, 516 N.W.2d 746 (Ct. App. 1994). Although we do not look beyond the statute's plain meaning, we will consider its parts in relationship to the whole statute and to related sections. *See Elliott v. Employers Mut. Cas. Co.*, 176 Wis. 2d 410, 414, 500 N.W.2d 397 (Ct. App. 1993). When a statute's language is ambiguous, we may then consider legislative intent and collateral sources, including "the scope, history, context, subject matter and object of the statute." *Armor All Prods. v. Amoco Oil Co.*, 194 Wis. 2d 35, 50, 533 N.W.2d 720 (1995). "Statutory language is ambiguous if reasonably well-informed individuals could differ as to its meaning." *State v. Kirch*, 222 Wis. 2d 598, 602–03, 587 N.W.2d 919 (Ct. App. 1998).

¶ 6. An administrative rule is invalid if it exceeds the statutory authority of the promulgating agency. *See* WIS. STAT. § 227.40(4)(a); *see also Seider v. O'Connell*, 2000 WI 76, ¶ 70, 236 Wis. 2d 211, 612 N.W.2d 659. To determine whether an agency has exceeded its statutory authority in promulgating a rule, this court first examines the enabling statute, which indicates whether the legislature expressly or implicitly authorized the agency to create the rule. *See Seider*, 2000 WI 76 at ¶ 70. Generally, "an administrative agency has only those powers as are expressly conferred or necessarily implied from the statutory provisions under which it operates, but acting within that grant of delegated power, an agency effectuates

the will of the legislature." *Brown County v. DH&SS*, 103 Wis. 2d 37, 43, 307 N.W.2d 247 (1981). Any doubts, however, as to the implied power of an agency are to be resolved against the existence of authority. *See Debeck v. DNR*, 172 Wis. 2d 382, 387, 493 N.W.2d 234 (Ct. App. 1992).

¶ 7. To establish whether an agency rule was promulgated by express authorization from the legislature, a reviewing court "should identify the elements of the enabling statute and match the rule against those elements." *Wisconsin Hosp. Ass'n v. Natural Resources Bd.*, 156 Wis. 2d 688, 706, 457 N.W.2d 879 (Ct. App. 1990). "If the rule matches the statutory elements, then the statute expressly authorizes the rule." *Id.* This court has recognized, however, that if an enabling statute needed to spell out every detail of a rule in order to expressly authorize it, no rule would be necessary. *See id.* at 705–06. "Accordingly, whether the exact words used in an administrative rule appear in the statute is not the question." *Id.*

¶ 8. WISCONSIN ADMIN. CODE § NR 326.01 outlines the purpose of § NR 326, stating: "These rules are promulgated under ss. . . . 30.12, 30.13 . . . and 227.11, Stats., in order to provide consistency in the application of ss. 30.12 and 30.13, Stats., to the construction of piers, boat shelters and similar structures on the beds of navigable waterways as aids to navigation." In turn, WIS. STAT. § 227.11 provides, in pertinent part:

> **(2)** Rule-making authority is expressly conferred as follows:
>
> (a) Each agency may promulgate rules interpreting the provisions of any statute enforced or administered by it, if the agency considers it necessary to effectuate the pur-

pose of the statute, but a rule is not valid if it exceeds the bounds of correct interpretation.

■

¶ 9. At issue in the present case is WIS. STAT. § 30.12(3)(c), which authorizes the DNR to

> promulgate rules deemed necessary to carry out the purposes of par. (a)6., including rules to establish minimum standards to govern the architectural features of boat shelters and the number of boat shelters that may be constructed adjacent to a parcel of land. The rules may not govern the aesthetic features or color of boat shelters. The standards shall be designed to assure the structural soundness and durability of a boat shelter.

*Id.*[4] Grafft contends that the legislature did not expressly authorize promulgation of WIS. ADMIN. CODE § NR 326.055(4)(f) because the statutory elements do not match the administrative rule. We agree. WIS. ADMIN. CODE § NR 326.055(4)(f) provides that permits for permanent boat shelters may only be granted for locations adjacent to developed shorelines. The statute does not expressly authorize the DNR to grant or deny permanent boat shelter permits based on the "undevel-

---

[4] WISCONSIN STAT. § 30.12(3)(a)6 provides:

The department, upon application, may grant to a riparian owner a permit to:

. . . .

6. Place a permanent boat shelter adjacent to the owner's property for the purpose of storing or protecting watercraft and associated materials, except that no permit may be granted for a permanent boat shelter which is constructed after May 3, 1988, if the property on which the permanent boat shelter is to be located also contains a boathouse within 75 feet of the ordinary high-water mark or if there is a boathouse over navigable waters adjacent to the owner's property.

oped shoreline" standard of § NR 326.055(4)(f). Rather, the statutory language authorizes the DNR to "promulgate rules deemed necessary" to effectuate its discretionary authority to either grant or deny a riparian owner the permit necessary to construct a permanent boat shelter adjacent to his or her property.[5] We conclude this language is ambiguous and therefore resort to rules of statutory construction to determine if the legislature implicitly authorized the DNR to promulgate the "undeveloped shoreline" standard of § NR 326.055(4)(f).

¶ 10. Looking to the history of the statute, "[i]t is well established that the state holds the beds underlying navigable waters in trust for all of its citizens." *Sterlingworth Condo.*, 205 Wis. 2d at 723. In furtherance of that trust, the legislature "has declared it to be unlawful to place any structure on the bed of a navigable water unless a permit has been granted by the DNR, or unless the structure is otherwise authorized by statute." *Id.* This court has recognized that WIS. STAT. § 30.12, which governs the construction of permanent boat shelters, prohibits "structures that are detrimental to the public interest." *Id.* at 724. We have further recognized that the statute authorizes the DNR "to weigh the relevant policy factors which include, 'the desire to preserve the natural beauty of our navigable waters, to obtain the fullest public use of such waters, including but not limited to navigation, and to provide for the convenience of riparian owners.' " *Id.* at 724–25.

---

[5] WISCONSIN STAT. § 30.12(3) provides that the DNR, upon application, "may" grant a riparian owner the permit necessary to place a permanent boat shelter adjacent to the owner's property. The word "may" is generally construed as permissive or discretionary. *See Kotecki & Radtke, S.C. v. Johnson*, 192 Wis. 2d 429, 447–48, 531 N.W.2d 606 (Ct. App. 1995).

¶ 11. Within this general framework, WIS. STAT. § 30.12(3)(c) authorizes the DNR to establish those "rules deemed necessary" to effectuate its discretionary authority to either grant or deny a riparian owner the permit necessary to construct a permanent boat shelter. To that end, § 30.12(3)(c) provides that *included* among those rules deemed necessary, may be rules to establish minimum standards governing (1) the architectural features of boat shelters; and (2) the number of boat shelters that may be constructed adjacent to a parcel of land. The statute thus implicitly authorized the DNR to promulgate the undeveloped shoreline standard of WIS. ADMIN. CODE § NR 326.055(4)(f).

¶ 12. Grafft nevertheless contends the rule contradicts the legislative intent and, thus, the DNR exceeded its authority in promulgating it. "An agency interpretation is not reasonable if it contradicts either the language of a statute or legislative intent." *Seider*, 2000 WI 76 at ¶ 72. Where a conflict arises between a statute and an administrative rule, the statute prevails. *See id.*

¶ 13. The legislature enacted WIS. STAT. § 30.12(3) to regulate the construction of permanent boat shelters. *See* 1987 WIS. ACT 374, § 22. The previous § 30.12(3)(c) (1987–1988) provided, in relevant part:

> The department may promulgate rules deemed necessary to carry out the purposes of par. (a)6, including rules to establish minimum standards to govern the architectural and *aesthetic features* of boat shelters and the number of boat shelters that may be constructed adjacent to a parcel of land. The standards shall be designed to assure the structural soundness and durability of a boat shelter *and to minimize the visual intrusiveness of a boat shelter*

*with respect to the surrounding body of water and shoreline.* (Emphasis added.)

In 1991, the DNR promulgated the present boat shelter standards of WIS. ADMIN. CODE § NR 326.055(4)(f). The legislature subsequently amended § 30.12(3)(c), removing any language regarding the aesthetics of boat shelters.[6] *See* 1995 WIS. ACT 27, § 1657ym. The amended statute provides:

> The department may promulgate rules deemed necessary to carry out the purposes of par. (a)6., including rules to establish minimum standards to govern the architectural features of boat shelters and the number of boat shelters that may be constructed adjacent to a parcel of land. The rules may not govern the aesthetic features or color of boat shelters. The standards shall be designed to assure the structural soundness and durability of a boat shelter. . . .

WIS. STAT. § 30.12(3)(c) (1995–96).

■

¶ 14. Given the statute's amendment, Grafft argues the DNR has exceeded its rule-making authority by denying permits based on its "undeveloped shoreline" standard—a standard that determines the visual intrusiveness of principal structures located

---

[6] Our review of the legislative reference file indicates that, by amending WIS. STAT. § 30.12(3)(c), the legislature intended to eliminate the DNR's ability to promulgate rules regarding the regulation of boat shelter color or aesthetic value. Accordingly, we conclude that when the legislature deleted language regarding the "visual intrusiveness of a boat shelter with respect to the surrounding shoreline," it was simply effectuating its intent to prevent DNR regulation based on boat shelter color or aesthetics.

adjacent to the proposed boat shelter site.[7] We conclude, however, that the administrative rule does not conflict with the amended statute. The language of the statute evinces the legislature's intent to remove regulations based on the aesthetics and color of proposed boat shelters; however, it does not limit rule-making concerning the surrounding principal structures.[8] Accordingly, consistent with its implied authority to make rules deemed necessary to effectuate its discretionary authority to grant or deny permanent boat shelter permits to riparian owners, the DNR promulgated the undeveloped shoreline standard. That standard does not consider the aesthetics, color or visual intrusiveness of a proposed boat shelter, but rather, limits the number of boat shelters based on the number of visually intrusive principal structures surrounding the proposed boat shelter site. Because the administrative rule neither contradicts the legislative intent nor exceeds the bounds of correct interpretation, *see Seider*, 2000 WI 76 at ¶¶ 71–72, we conclude the

---

[7] Grafft emphasizes the statute's amendment to support his contention that the DNR exceeded its rule-making authority. We recognize, however, that at oral argument, Grafft argued that the DNR exceeded its authority at the rule's inception. In any event, we conclude the DNR did not exceed it rule-making authority by promulgating WIS. ADMIN. CODE § NR 326.055(4)(f).

[8] The amended statute arguably speaks to the regulation found in WIS. ADMIN. CODE § NR 326.055(2)(b), which provides, in relevant part, that "[a] boat shelter may not be visually intrusive as viewed against the shoreline." Although the DNR concedes it does not have the authority to regulate the color or aesthetics of boat shelters, it notes that it has not removed this language from its regulations. In any event, Grafft does not challenge para. (2)(b) of the rule and we therefore refraining from addressing it.

DNR did not exceed its authority by promulgating WIS. ADMIN. CODE § NR 326.055(4)(f).

¶ 15. Because we conclude the DNR did not exceed its authority by promulgating WIS. ADMIN. CODE § NR 326.055(4)(f), we refrain from addressing the DNR's alternative arguments for denying Grafft's permit application. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983) (only dispositive issues need be addressed). Although at oral argument Grafft contended, with some persuasion, that the rule is arbitrary, at best, in its application, the only issue before this court is whether the DNR exceeded its authority in promulgating § NR 326.055(4)(f).[9] It is not for this court, based on the record before us, to second-guess the wisdom of the rule.

*By the Court.*—Order reversed and cause remanded.

[9] Grafft's counsel strongly and eloquently made this assertion during oral argument. Nevertheless, there are no facts in the record about arbitrary application because that was not an issue in the case. Without a factual basis, we cannot determine whether the rule is arbitrarily applied.