**COURT OF APPEALS
DECISION
DATED AND FILED**

**June 18, 2026**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP805**

STATE OF WISCONSIN

Cir. Ct. No. **2024CV288**

IN COURT OF APPEALS
DISTRICT IV

---

KRISTY STEWART,

   PETITIONER-APPELLANT,

V.

WISCONSIN DEPARTMENT OF HEALTH SERVICES,

   RESPONDENT-RESPONDENT.

---

APPEAL from an order of the circuit court for Sauk County: BLAKE J. DUREN, Judge. *Affirmed*.

Before Graham, P.J., Blanchard, and Taylor, JJ.

¶1      BLANCHARD, J.   Kristy Stewart pursues an administrative appeal challenging final billing notices issued to her by the Sauk County Department of Human Services (the county).   The county's notices direct Stewart to pay debts for room and board costs generated in a county-administered program.   After Stewart

filed an administrative appeal with the Wisconsin Department of Health Services (the Department) challenging the county's notices, she received an adverse ruling on the merits from an administrative law judge and she objected to that ruling. The Department dismissed Stewart's objection without reaching the merits, based on a decision that she is not entitled to an administrative appeal. The issue in this appeal is whether the Department's decision was correct.

¶2 Stewart invokes provisions in WIS. STAT. § 46.10 (2023-24) to argue that she has a right to appeal to the Department.[1] Most prominently, she relies on § 46.10(4)(a), which grants to persons aggrieved by orders to compel payments of debts governed by § 46.10 the right to a contested case hearing with the Department under WIS. STAT. ch. 227. The Department's position to the contrary is based on the fact that the Department itself has not issued to Stewart an order to compel payment of the debt, and also on the fact that all she received were final notices directing her to make payments. *See* § 46.10(4)(a) (creating a right to a contested case hearing for a person who is issued "an order to compel payment" by the "[D]epartment").

¶3 We affirm the Department's decision that Stewart cannot pursue administrative review by the Department under WIS. STAT. § 46.10, based on our conclusion that Stewart fails to identify "an order to compel payment" issued to her by either the county or the Department, which is necessary to trigger her right to administrative review. Given the absence of an order to compel payment, we

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

affirm the circuit court's decision to affirm the Department's dismissal of Stewart's appeal.

¶4 In order to provide further guidance in this area, however, we separately explain why we reject the Department's position that it must deny an administrative appeal under WIS. STAT. § 46.10(4)(a) that is pursued by a person who, unlike Stewart here, *has* received an order to compel payment from the county department. We conclude that such an order from the county would have been the functional equivalent of an order from the Department. This conclusion is based on multiple features of § 46.10, including that the Department is required under § 46.10(16) to delegate to county departments, such as the county here, the Department's relevant responsibilities for the collection of debts for patient fees for services under § 46.10. Therefore, the administrative appeal path would have been open to Stewart, had the county issued to her an order compelling payment of the alleged liabilities at issue.

## BACKGROUND

¶5 Kristy Stewart is a Sauk County resident with a disabling mental illness. Before January 2023, Stewart was enrolled in a county-administered "comprehensive community services program," which covered her room and board costs at a privately owned and operated community-based residential facility. *See* WIS. ADMIN. CODE § DHS 36.03(4) (defining such a program in pertinent part as "a county-wide … community-based psychosocial rehabilitation program that is operated by a county department … to provide or arrange for the provision of psychosocial rehabilitation services").[2] That month, she was

---

[2] All references to the WIS. ADMIN. CODE are to the version adopted April 2026.

3

transitioned to a different county program, a community support program. *See* WIS. ADMIN. CODE § DHS 63.01(1) (defining the purpose of such programs as being "to provide effective and easily accessible treatment, rehabilitation[,] and support services in the community where persons with chronic mental illness live and work"). Counties may establish such community support programs under WIS. STAT. § 51.421, which may qualify for appropriate reimbursements through the Wisconsin Medical Assistance program. *See* § DHS 63.01(2). The county took the position that, under the community support program, Stewart was obligated to contribute to her room and board.

¶6 The county sent Stewart multiple bills, including one that included the phrase "FINAL NOTICE," directing her to pay $1,390.80. It stated in part, "20% COLLECTION FEE WILL BE CHARGED TO PAST DUE BALANCES SENT TO A COLLECTION AGENCY" and also stated, "PROMPT PAYMENT WILL AVOID USE OF FURTHER COLLECTION ACTION."

¶7 Through counsel, Stewart filed an appeal with the state Division of Hearings and Appeals in September 2023, requesting a hearing before an administrative law judge for review of the basis for the county's notices.[3]

---

[3] In initiating the administrative appeal to the Department, Stewart asserted that she sought a "fair hearing," but during the administrative hearing, Stewart's counsel clarified that Stewart sought a contested case hearing under WIS. STAT. ch. 227, and that is how both the ALJ and the Department interpreted her appeal to the Department. *See* WIS. ADMIN. CODE § HA 3.02(8) (defining a "fair hearing" to be "a de novo proceeding before an impartial administrative law judge in which the petitioner or the petitioner's representative presents the reasons why the agency or department action or inaction in the petitioner's case should be corrected"). Neither side suggests on appeal that this initial mischaracterization has any effect on the issues here.

¶8 We discuss below the parties' theories about Stewart's ability to pursue a contested case hearing and the pertinent statutory provisions. It is sufficient as background to note that Stewart bases her claim of a right to an administrative appeal primarily on WIS. STAT. § 46.10(4)(a) and (16). Under § 46.10(4)(a), the Department "may issue an order to compel payment of" a liability arising under § 46.10(2), which defines liabilities that include Stewart's alleged debt. Section 46.10(4)(a) also states that a person who is "aggrieved by" such an order "may appeal the order as a contested case under [WIS. STAT.] ch. 227." Under § 46.10(16), the Department must delegate to county departments the Department's responsibilities to collect patient fees for services, so long as the county departments meet Department standards.

¶9 An administrative law judge held a hearing on the merits of Stewart's appeal in February 2024, which included testimony from a county manager for business and administrative services. Stewart's counsel and the county's corporation counsel disputed issues that included: whether the county had the authority to determine monthly cost contributions for room and board expenses by a community-based residential facility for a resident such as Stewart; and whether such expenses can be covered by the Medical Assistance program or a Health Maintenance Organization contracted through the Medical Assistance

program.[4] In February 2024, the administrative law judge ruled that the county had authority to determine that Stewart must pay the room and board costs. Stewart filed with the Department a written objection to the administrative law judge's proposed decision.

¶10 In June 2024, the Department's secretary-designee issued the decision we now review. The Department dismissed Stewart's objection, without reaching the merits, on the ground that the administrative law judge lacked "jurisdiction to review a county department's decision to collect a cost share for room and board or issue a demand for payment."[5] Primarily interpreting its own regulations, the Department determined that Stewart is not aggrieved by an order to compel payment issued by the Department. The Department also stated that, because the county is not an "agency" as defined in WIS. STAT. § 227.01(1), Stewart cannot pursue a "contested case" as defined in § 227.01(3).

---

[4] Although we do not reach the merits of the underlying dispute about what Stewart does or does not owe, we note the following as basic context. Stewart is a recipient of "medical assistance," also known as Medicaid. *See* 42 U.S.C. § 1396; WIS. STAT. § 49.45 ("Medical assistance; administration"). Medicaid provides free or low-cost health care for various categories of people, including those with disabilities. ***Papa v. DHS***, 2020 WI 66, ¶4, 393 Wis. 2d 1, 946 N.W.2d 17. Stewart is entitled to Medicaid health care services provided to her through a Managed Care Organization. Stewart points out that the phrase "Health Maintenance Organization" has "been used interchangeably throughout this litigation" with the phrase "Managed Care Organization." Further, the Department enters into contracts with county human services departments, such as the county here, to provide funding for programs of the type at issue here, and the Department can withhold any funding that would violate federal or state statutes or regulations. *See* WIS. STAT. § 46.031(2g), (2r)(a)2.

[5] In the Department's challenged decision, and also in its appellate briefing, the Department sometimes states that it lacks "jurisdiction" over Stewart's administrative appeal. The Department would apparently characterize the issue here as involving a jurisdictional limit on the types of hearings that ALJs can conduct. But we avoid using variations on the word jurisdiction because that could generate confusion on the narrow issue that we address in this appeal, and because we are not discussing the jurisdiction of any court. The question we address is strictly a matter of statutory interpretation: Can Stewart invoke WIS. STAT. § 46.10(4)a) to initiate administrative review with the Department?

¶11 Pursuant to WIS. STAT. § 227.52, Stewart petitioned in the circuit court for judicial review of the Department's decision to dismiss her appeal. The court affirmed the Department's decision and dismissed the petition. Stewart appeals.

## DISCUSSION

¶12 A party seeking to overturn an agency decision in a WIS. STAT. ch. 227 review proceeding has the burden of proving that reversal is required. *Sierra Club v. DNR*, 2025 WI App 39, ¶36, 417 Wis. 2d 90, 24 N.W.3d 157. We review the agency's decision and not the circuit court's decision. *Id.*

¶13 Stewart asserts that we should review the Department's decision to dismiss her appeal under the "due weight" standard described in *Tetra Tech EC, Inc. v. DOR*, 2018 WI 75, 382 Wis. 2d 496, 914 N.W.2d 21, and the Department expresses some agreement with that. *See id.*, ¶15 (describing a "tie goes to the agency" interpretative standard to be applied when an agency has some experience in an area but not "'the expertise which necessarily places it in a better position to make judgments regarding the interpretation of the statute than a court'" (quoted authority omitted)). But the Department does not argue that it has any relevant experience in interpreting WIS. STAT. § 46.10, and we conclude that these provisions are susceptible to only one reasonable interpretation on the issues that we address. Therefore, our review is de novo.

¶14 Stewart contends that she is entitled to a contested case hearing because the county here was exercising a right to collect debts that is entirely the responsibility of the Department and which the Department must delegate to the county. Therefore, Stewart argues, under WIS. STAT. § 46.10(4)(a), she qualifies as a person aggrieved by an order compelling payment that was issued by the

county, acting under the Department's delegated responsibilities, and she is therefore entitled to pursue an administrative appeal. *See* § 46.10(4)(a) (authorizing the "[D]epartment" to "issue an order to compel payment of [a] liability" and creating a right to pursue an administrative appeal by "[a]ny person aggrieved by an order issued by the [D]epartment under this paragraph"); § 46.10(16) (Department "shall delegate to county departments" "the responsibilities vested in the [D]epartment under [§ 46.10] for collection of patient fees for services").

¶15     The Department argues that Stewart's position is contrary to the terms of WIS. STAT. § 46.10(4)(a) for two reasons. First, it was the county, and not the Department, that gave her the notices. Second, none of the notices constituted an order to compel payment.

¶16     We reach the same conclusion as Stewart regarding the Department's first argument. We conclude that, if the county had issued an order to compel payment to Stewart, it would have been exercising a delegated responsibility of the Department under WIS. STAT. § 46.10 for the collection from her of patient fees for services pursuant to § 46.10(16).

¶17     But we reach the same conclusion as the Department regarding its second argument. We conclude that the county here did not issue an order to compel payment to Stewart within the meaning of WIS. STAT. § 46.10(4)(a). Before addressing these two points in turn, we first summarize and interpret in this context pertinent provisions in § 46.10.

*Pertinent Provisions of WIS. STAT. § 46.10*

¶18  WISCONSIN STAT. § 46.10 is located in the chapter of the state statutes entitled "Social Services."  Broadly speaking, § 46.10 provides that persons receiving specified types of social services and institutional care, in government-owned facilities or in facilities that contract with government agencies, shall be liable for the costs of care, maintenance, services, and supplies according to their ability to pay.  Further, § 46.10 creates responsibility for the collection of debts.  *See* WIS. STAT. §§ 46.10; 46.03(1), (17).

¶19  The following five subparts of WIS. STAT. § 46.10 are pertinent here.

¶20  **Subpart (1).**  WISCONSIN STAT. § 46.10(1) provides that the "[l]iability and the collection and enforcement of [the] liability" addressed in § 46.10 "is governed exclusively by" § 46.10, putting aside exceptions not pertinent here.  This eliminates the possibility that the responsibility for collections that is at issue in this appeal, and which is explicitly addressed in § 46.10, is governed or qualified by other statutes.  As discussed below, this exclusivity feature of § 46.10 undermines positions taken by the Department on the issue of the Department's delegation of collection responsibilities to county departments.

¶21  **Subpart (7).**  Under WIS. STAT. § 46.10(7), the Department "shall administer and enforce" § 46.10.  As discussed below, the fact that the Department is responsible for the administration and enforcement of the debt collections addressed in § 46.10 becomes relevant to the nature of the delegation by the Department to county departments that is required under subpart (16). Put simply, the debt collections that are exclusively addressed in § 46.10 are entirely under the purview of the Department.

¶22 **Subpart (2).** This is the provision in WIS. STAT. § 46.10 that primarily addresses liabilities, leaving collection aspects for other provisions. Pertinent here, the parties do not dispute that subpart (2) establishes liability for a person, such as Stewart, who has received care and services of the type at issue here, in accordance with a fee schedule established by the Department under WIS. STAT. § 46.03(18).

¶23 **Subpart (4)(a).** WISCONSIN STAT. § 46.10(4)(a) addresses enforcement of the liabilities that are defined in subpart (2), and also allows an aggrieved person to file an administrative appeal with the Department:

> If a person [who is] liable under [§ 46.10(2)] fails to make payment or enter into or comply with an agreement for payment, the [D]epartment may bring an action to enforce the liability or may issue an order to compel payment of the liability. Any person aggrieved by an order issued by the [D]epartment under this paragraph may appeal the order as a contested case under [WIS. STAT.] ch. 227 by filing with the [D]epartment a request for a hearing within 30 days after the date of the order.

This gives the Department two alternative routes to collect on liabilities under § 46.10: file an action against the alleged debtor to enforce the liability, or else issue to the alleged debtor an order to compel payment of the liability. And, whenever the Department opts for the second route of issuing an order to compel payment, that triggers the right of the recipient of the order to seek administrative review with the Department.

¶24 **Subpart (16).** Under WIS. STAT. § 46.10(16), the Department "shall delegate to" county departments or qualified local providers of care and services "the responsibilities vested in the [D]epartment under this section for collection of patient fees for services other than [specified categories of services not pertinent here] if the county departments or providers meet" Department conditions. The

delegation of responsibilities for collection required under subpart (16) evokes the two alternative routes for debt collection specified in subpart (4)(a)—most pertinent here, the order-issuing route. In other words, the Department is statutorily required to delegate the collection of fees to the county without limitation. As we discuss, we interpret the required delegation of all of the responsibility to collect fees to encompass the provisions of subpart (4)(a), including the authority to issue an order to compel payment of an alleged liability. As for the requirement that a county department meet the Department conditions, here the Department does not dispute that the county met the Department's conditions at all relevant times.

¶25 Bearing in mind all of these provisions, we address the Department's argument, which has two parts. One part involves the purported unique authority of the Department, and the other involves the nature of the county's final notices. Specifically, the Department contends that, under subpart (4)(a), the only persons who are entitled to an administrative appeal related to an alleged liability under subpart (2) are those who have received:

- an order issued by the Department, and not by another entity; and

- such order was issued to compel payment, and was not merely a direction or demand for payment, in the nature of an ordinary bill.

We now address the first issue, whether the county has unique authority to issue such an order, and then we turn to the order-to-compel aspect.

*The authority of "the [D]epartment" in subpart (4)(a)*

¶26 When subpart (4)(a) is read in isolation, without consulting other subparts of WIS. STAT. § 46.10, the Department's unique-authority argument has merit. "[T]he [D]epartment" on its face refers exclusively to the Department and

11

not to another entity. As noted in the general definitions for WIS. STAT. ch. 46, "'Department' means the department of health services." WIS. STAT. § 46.011(1e).

¶27 But we are required to consider all related provisions in WIS. STAT. § 46.10, because "statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole" and "in relation to the language of surrounding or closely-related statutes." *See State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶46, 271 Wis. 2d 633, 681 N.W.2d 110. When we apply this interpretative doctrine to multiple pertinent subparts of § 46.10, we see that, if the county had issued to Stewart an order to compel payment, the county would have been acting under a collection responsibility delegated to it by the Department.

¶28 We begin by noting the broad framing points established in subparts (1) and (7). As we have already referenced, for current purposes these provisions describe a set of liabilities and collections exclusively addressed in WIS. STAT. § 46.10, with the Department being placed in charge of all administration and enforcement. This leaves no room for an argument that the county's collection activity here is governed by some other statute or source of authority.

¶29 With that established, what comes into play next is the fact that subpart (16) requires the Department to delegate to county departments, such as the county here, "the responsibilities vested in" the Department under WIS. STAT.

§ 46.10 "for collection of patient fees for services."[6] That is, subpart (16) establishes that, in interpreting subpart (4)(a), the county's collection effort against Stewart was an entirely delegated exercise of the Department's responsibility to collect on a liability defined in subpart (2).

¶30 When these provisions are construed together, the only reasonable interpretation is that the delegated "responsibilities … for collection of patient fees for services" referred to in subpart (16) addresses responsibilities related to the collection of payments at issue in subpart (4)(a). More specifically, when there is delegation under subpart (16), the county is given the responsibility to decide whether to bring an action to enforce pertinent liabilities or to issue an order to compel payment. If the county decides to issue an order, then under subpart (4)(a), the recipient can pursue an administrative appeal under WIS. STAT. ch. 227. Accordingly, the county's collection effort here is equivalent to a collection effort of "the [D]epartment" for purposes of interpreting subpart (4)(a). As a result, if the county had issued to Stewart an order compelling payment, then she would have been authorized to initiate a ch. 227 appeal with the Department.

¶31 One way to summarize our conclusion is that the only reasonable interpretation of subpart (4)(a), in the context of a delegation under subpart (16), is that the following substitutions are made, as pertinent to the facts here:

> If a person liable under [subpart] (2) fails to make a payment or enter into or comply with an agreement for payment, the [county] department may bring an action to enforce the liability or may issue an order to compel payment of the liability. Any person aggrieved by an order issued by the [county] department under this paragraph

---

[6] Subpart (16) also requires delegation to local providers of care and services, but that delegation is not at issue in this appeal and we do not address it. *See* WIS. STAT. § 46.10(16).

> may appeal the order as a contested case under [WIS. STAT.] ch. 227 by filing with the [D]epartment a request for a hearing within 30 days after the date of the order.

¶32 It is important to note that the function of "the department" in the final reference, which addresses the filing of a request for a WIS. STAT. ch. 227 hearing, is not a function that is delegated to the county. Facilitating and hearing administrative appeals is not itself a responsibility for the "collection of patient fees" vested in the Department by WIS. STAT. § 46.10. Instead, consistent with the text of subpart (4)(a), the Department's ability to hear administrative appeals is outlined by the procedures described in ch. 227.[7]

¶33 The Department's unique-authority argument would effectively require the insertion of new language into subpart (16) to dilute the unqualified, section-wide nature of the delegation, which we cannot do. *See Lovelien v. Austin Mut. Ins. Co.*, 2018 WI App 4, ¶15, 379 Wis. 2d 733, 906 N.W.2d 728 (2017) ("[C]ourts avoid interpretations that require inserting words into statutes."). For example, subpart (16) does not limit the delegation of the Department's collection

---

[7] On appeal the Department asserts, as it did in its challenged decision, that WIS. STAT. § 227.01(1) and (3) establish that "contested cases under [WIS. STAT. ch.] 227 are limited to decisions made by state agencies, not those made by counties." If by this, the Department means that the only decisions that may be challenged in ch. 227 contested cases are decisions made by a state agency, this proposition is not remotely supported by the cited authority. *See* § 227.01(1) (defining "agency" as "a board, commission, committee, department or officer in the state government"); § 227.01(3) (defining a contested case as "an agency proceeding in which the assertion by one party of any substantial interest is denied or controverted by another party"). Further, we observe that elsewhere in the statutes the legislature has specified that the decision or action of certain non-statewide entities can come before a state agency through a contested case under ch. 227. *See, e.g.*, WIS. STAT. § 30.77(3)(a)-(ac), (dm)2.-2r. (outlining procedures that include contested case hearings under ch. 227 to pursue objection to municipal ordinances that are allegedly noncompliant with statewide standards for boating regulations). If, instead, the Department means only that ch. 227 contested cases are proceedings that must be conducted through state agencies, this does not assist the Department in this appeal. Stewart seeks administrative review with the Department, which is an agency under this definition.

responsibilities to only particular subparts of WIS. STAT. § 46.10. Instead, it refers broadly to "the responsibilities vested in the [D]epartment *under this section* for collection of patient fees for services." § 46.10(16) (emphasis added).

¶34 To the extent that the parties debate whether the county acted as an "agent" of the Department under the law of agency in issuing the final notices to Stewart, we do not need to resolve that dispute. There is no need to consider agency law in this context, because the legislature has directed that the Department delegate these specific collection responsibilities to county departments, and further directed that an order to compel payment issued under this authority triggers the right to an administrative appeal to the Department.[8]

¶35 The Department does not develop a supported argument that the delegation of collection responsibility established under subpart (16) excludes subparts *other than* subpart (4)(a), nor could the Department reasonably take that position. *See, e.g.*, WIS. STAT. § 46.10(3) (stating that, after investigation of an ability to pay, "the [D]epartment shall make collection from the person who in the opinion of the [D]epartment under all of the circumstances is best able pay"). A county department acts as the Department's delegee for all collection responsibilities provided in all subparts, because that is what the unqualified

---

[8] The Department does not suggest that it did not in fact delegate these responsibilities to the county here, despite the direction in subpart (16) that the Department "shall delegate to county departments" relevant collection responsibilities when the county departments meet the Department's conditions. Therefore, we assume that the Department has no argument to make along these lines. Put differently, under the construction of the pertinent provisions that we explain in this opinion, we are given no reason to think that Stewart was not entitled to pursue her administrative appeal under the presumption that the county gave her the documents at issue while it was acting under collection authority that the Department had delegated to the county, with the further presumption that any claimed failure of the Department to delegate, or any claimed defect in the delegation, would need to be raised against her in the administrative proceeding.

language in subpart (16) directs. There is no textual basis to exclude subpart (4)(a) from this consistent delegation to county departments of the collection activities for the liabilities that are the subject of § 46.10.

¶36 Indeed, the approach now advocated by the Department would appear to directly undermine the obvious legislative intent to create effective collection procedures in this social services context throughout the state to recoup costs using the interrelated provisions in WIS. STAT. § 46.10. One notable example is the automatic-judgment mechanism established in subpart (5), which we discuss in more detail in connection with the second issue below. Under this mechanism, if the alleged debtor does not pay the amount stated in an order to compel payment, and there is no contested case pending, "the [D]epartment" may present a circuit court with a certified copy of the order. *See* § 46.10(5). Then, without notice to the alleged debtor, the Department automatically obtains an enforceable judgment that has the same enforcement effect as one rendered in an action tried in court. *See* § 46.10(5). If subpart (5) were interpreted to establish that the Department—and only the Department—could obtain such a judgment, then county departments could not obtain them. But there are no textual clues in § 46.10 that the legislature intended to constrain collections to recoup costs in this manner. *See **J.G.W. v. Outagamie Cnty. DHHS***, 153 Wis. 2d 412, 417-18, 451 N.W.2d 416 (1990) ("The purpose of [WIS. STAT. §§] 46.03(18) and 46.10 … is to recoup the costs of providing social services and treatment by requiring liable family members to pay their fair share." (interpreting WIS. STAT. §§ 46.03(18) and 46.10 (1989-90))).

¶37 The Department points out that when "the [D]epartment," as referenced in various provisions of WIS. STAT. § 46.10, issues an order to compel payment, it is obligated under subpart (4)(c) to add interest to the alleged debt (at

16

an annual rate of 12%), and also that, as referenced above, it is entitled under subpart (5) to seek an enforceable judgment by docketing such an order. But here again, the Department fails to acknowledge the unambiguous, unqualified meaning of subpart (16). The collection responsibilities under subpart (4)(c), and the option under subpart (5), are both delegated to county departments, which must add interest and may pursue the automatic judgments.

¶38 The Department argues that its own regulations confirm that a person's right to an administrative appeal under subpart (4)(a) is exclusively triggered by an attempt to collect on a liability through an order to compel payment that is issued by the Department, and only the Department. But to the extent that these regulations could provide guidance, they contradict the Department's position. For example, WIS. ADMIN. CODE § DHS 1.06(4) states in part that a "county department may … issue an order to compel payment as provided under [WIS. STAT. §] 46.10." The Department appears to argue that § DHS 1.06(6), which echoes the right-to-appeal language of § 46.10(4)(a), accurately reflects that the right to appeal an order to compel payment arises only from an order issued by the Department. This is demonstrated, according to the Department, by the fact that § DHS 1.06(6) does not reference orders by county departments in contrast to other pertinent regulatory provisions. *See* § DHS 1.06(1), (2)(b), (3)-(4). This argument fails based on our reasoning above. To the extent that § DHS 1.06(6) fails to apply the unambiguous terms of subpart (16) to subpart (4), then § DHS 1.06(6) would conflict with statutory language and is therefore invalid. *See **Wisconsin Ass'n of State Prosecutors v. WERC***, 2018 WI 17, ¶36, 380 Wis. 2d 1, 907 N.W.2d 425 (administrative rules that conflict with state statutes are invalid); ***Grafft v. DNR***, 2000 WI App 187,

¶12, 238 Wis. 2d 750, 618 N.W.2d 897 (When a statute and an administrative rule conflict, "the statute prevails.").[9]

¶39    For these reasons, we conclude that, if the county had issued to Stewart an order to compel payment, then she could pursue an administrative appeal under WIS. STAT. § 46.10(4)(a).

*Meaning of "an order to compel" in subpart (4)(a)*

¶40    The Department asserts that, even if the county had been delegated the Department's collection responsibilities under all pertinent provisions of WIS. STAT. § 46.10, the county merely issued bills to Stewart in attempts to collect on liabilities, and none of these bills either purport to be, or in fact qualify as, "an order to compel payment" as required to permit her to pursue an administrative appeal under subpart (4)(a).  We now explain why we conclude that none of the final notices of debt to Stewart constituted "an order to compel payment" as that phrase is used in subparts (4)(a), (4)(c), and (5), and why we reject Stewart's arguments on this issue.

¶41    The word "order" is not among the words generally defined in WIS. STAT. ch. 46, *see* WIS. STAT. § 46.011, nor is it defined within WIS. STAT. § 46.10. No form for an order is prescribed in § 46.10.  But the absence of a model form in the statute does not in itself signal a legislative intent that all bill-like documents

---

[9] The Department briefly notes that certiorari review is one mechanism by which a court may test the validity of a decision rendered by a municipality. *See **Ottman v. Town of Primrose***, 2011 WI 18, ¶34, 332 Wis. 2d 3, 796 N.W.2d 411 ("Certiorari is a mechanism by which a court may test the validity of a decision rendered by a municipality.").  But the Department fails to develop an argument from this that supports its position on this issue and we reject it on that basis. *See **State v. Pettit***, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (this court need not address undeveloped arguments, such as those not supported by legal authority).

constitute orders to compel payment in this context. Instead, we determine the meaning of the phrase "order to compel payment" from the context of its use in § 46.10.

¶42    With this context in mind, we conclude that the final notices here could not be orders to compel payment for at least the reason that they do not alert the reader to the significant mechanism of the automatic-judgment mechanism of subpart (5), which we have referred to in the discussion above. That is, they did not reasonably alert Stewart (or anyone else, including anyone attempting to look out for Stewart's interests) to the availability of the automatic-judgment mechanism in the event that any were deemed to be an order to compel payment and Stewart did not pursue a contested case by the 30-day deadline. The automatic-judgment mechanism could apply here in the following way. If Stewart failed to pay the county the amount stated, and if she also failed to initiate an administrative appeal, then the county could "present a certified copy of the order" to a circuit court, after which the court "shall, without notice, render judgment in accordance with the order"—a judgment that would have the same force as one rendered by a circuit court in a civil action. *See* § 46.10(5). Despite this significant potential jeopardy for a person in Stewart's position, the notices do not in any way suggest that the next time she might hear about these alleged debts would be when she was presented with an enforceable judgment that a circuit court was obligated to enter, having received the certified copy of the alleged order. For these reasons, whatever else the phrase "order to compel payment of the liability" in subparts (4)(a) and (4)(c) might mean, the phrase must be construed in light of the use to which such an order may be put through the automatic-judgment mechanism in subpart (5). It is difficult to imagine a contrary legislative intent for two reasons.

19

¶43 First, it would completely blindside some people in Stewart's position to allow all bill-like documents to be treated as orders to compel payments that may be used to trigger the automatic-judgment mechanism when the documents do not: identify themselves as orders to compel payment for liabilities under WIS. STAT. § 46.10; refer to the ability of the recipient to pursue an administrative appeal of the order, and the deadline for doing so under subpart (4)(a); and refer to the automatic-judgment mechanism under subpart (5). A person in Stewart's position should not have to guess which bills that she might receive are orders to compel payment and therefore potentially available to trigger that mechanism.

¶44 Second, for the same reasons, it would likely confuse circuit courts in some circumstances to be presented with many variations of bill-like documents in this context and have to try to figure out which ones are in fact orders to compel payment despite the absence of this information.

¶45 It is true that the notices here purported to be final accountings of amounts that Stewart owed and should promptly pay. Further, in stating "20% COLLECTION FEE WILL BE CHARGED TO PAST DUE BALANCES SENT TO A COLLECTION AGENCY," the notices conveyed that if Stewart did not pay the amount owed promptly, she risked additional penalties. Similarly, in stating, "FINAL NOTICE-PROMPT PAYMENT WILL AVOID USE OF FURTHER COLLECTION ACTION," the notices announced that payments should be made. In particular, the phrase "final notice" conveys that the county has tried to collect from Stewart before, and that the county purports to be making one last command before potentially harsh collection efforts follow. But these features of the notices merely render them unmistakable as bills, not orders to compel payment under WIS. STAT. § 46.10(4)(a).

20

¶46    Stewart makes three primary points on this issue, which we identify and discuss in turn.

¶47    First, Stewart contends that we should not address the issue because the Department failed to raise it during the administrative proceedings or in the challenged decision. But this is a significant legal issue. Further, Stewart does not suggest that she is disadvantaged because relevant facts were not properly developed or addressed in the agency or circuit court proceedings. Beyond that, both sides have had a full opportunity to address the issue in this appeal. Accordingly, we choose to disregard forfeiture under the circumstances. *See State v. Counihan*, 2020 WI 12, ¶27, 390 Wis. 2d 172, 938 N.W.2d 530 (forfeiture "is a rule of judicial administration," which courts "may disregard" "in an appropriate case"). Affirming the circuit court on this ground would not blindside the court with a reversal, which is one consideration in applying the forfeiture doctrine. *See Townsend v. Massey*, 2011 WI App 160, ¶25, 338 Wis. 2d 114, 808 N.W.2d 155 (reiterating proposition that "the 'fundamental' forfeiture inquiry is whether a legal argument or theory was raised before the circuit court, as opposed to being raised for the first time on appeal in a way that would 'blindside' the circuit court").

¶48    Second, Stewart asserts that the Department conceded the issue by characterizing one or more of the notices as an "order to compel payment" in its briefing to the circuit court. We decline to treat these references as affirmative concessions that resolve the issue. The Department made the references in the course of discussion that did not involve this issue, and in any event, we now resolve the legal issue on the merits in the opposite direction. *See Wilmet v. Liberty Mut. Ins. Co.*, 2017 WI App 16, ¶19 & n.11, 374 Wis. 2d 413, 893 N.W.2d 251 (explaining that, while the court of appeals does not abandon its

neutrality to develop arguments that a party could have but has not made, when a party concedes what we deem to be an erroneous interpretation of statutory language, we are not obligated to resolve the issue consistently with the concession).

¶49     Third, Stewart argues that "a reasonable person" in her position "would interpret the bills from Sauk County as an order to compel payment." This argument is not well developed, although in fairness we acknowledge that she attempts to counter an argument by the Department on this topic that is also not well developed. Notably, neither party recognizes the significance of subpart (5), as discussed above. We now discuss two points that Stewart makes as part of this argument.

¶50     Stewart also suggests that a ruling that none of the final notices here are orders compelling payment would improperly reward the county for its "error" in failing to reference the interest-payment obligation feature of subpart (4)(c). But our determination that the final notices that Steward received are not "order[s] to compel payment" does not turn on what the final notices do or do not say about interest.

¶51     Stewart further suggests that it would be appropriate to give people with significant mental or behavioral health concerns who incur alleged liabilities under WIS. STAT. § 46.10, such as Stewart herself, the benefit of the doubt when they treat a notice of debt as an order to compel payment for purposes of seeking administrative review. We appreciate the contextual perspective. But the fact that Stewart has taken that position based on the particular final notices that she received does not assist us in interpreting the statutory language. Courts must interpret and apply § 46.10 consistently across cases. In addition, bearing in mind

22

the contextual perspective, we have explained why, under Stewart's approach, a person in her position would be at risk of the potentially dire consequences of the automatic-judgment mechanism of subpart (5) every time she failed to treat a bill-like document as an order to compel payment.

¶52     In order to resolve this appeal, it is not necessary for us to list all of the features that an order to compel payment under WIS. STAT. § 46.10 must have, because the final notices here have such limited content for reasons we have explained.   But we now clarify the legal standards, based on our review of pertinent provisions.   As we have already suggested, we conclude that an order must, at a minimum, include the following: a statement to the effect that it is an order to compel payment for liabilities under § 46.10; explicit reference to the ability of the recipient to pursue an administrative appeal of the order, and the deadline for doing so, under subpart (4)(a); and explicit reference to the automatic-judgment mechanism under subpart (5).   When a bill-like document lacks any of these components, those involved in keeping track of collection activities, recipients of purported orders, and courts and administrative law judges are all unable to sort mere bills from orders compelling payment with a reasonable degree of consistency.   The legislature could not have intended such an indeterminate procedure.[10]

---

[10] We conclude that, at a minimum, these components are necessary to constitute an order to compel payment based on the statutory provisions that we have addressed in this appeal, most notably subparts (4)(a) and (5).   Because these components are absent in this case, we express no views about whether other statutory provisions that are not central to the discussion in this opinion should be interpreted to require additional components.

¶53    In sum on this issue, we conclude that Stewart cannot pursue an administrative appeal under WIS. STAT. § 46.10(4)(a), because none of the notices constituted an order to compel payment.

¶54    Thus, we conclude that Stewart would qualify as a person "aggrieved by an order issued by the department under this paragraph," and she would therefore be entitled to a final decision on the merits from the Department if the county had issued to her "an order compelling payment," but we also conclude that the county did not do that.

## CONCLUSION

¶55    For all of these reasons, we affirm the circuit court's decision to affirm the Department's dismissal of Stewart's appeal.

*By the Court*.—Order affirmed.

Recommended for publication in the official reports.